# No. 12,837.

## EMPLOYERS' MUTUAL INSURANCE COMPANY ET AL. *v.* INDUSTRIAL COMMISSION.

(3 P. [2d] 1079)

Decided October 5, 1931.

476

Mr. Frank C. West, for plaintiffs in error.

Mr. Clarence L. Ireland, Attorney General, Mr. Arthur L. Olson, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

The Employers' Mutual Insurance Company, the insurance carrier, and the Dick Coal Company, the employer, complain of the judgment of the district court affirming an award of the Industrial Commission, which award ordered the payment of $300 to the landlady of Thomas Elliott, the employee, and "funeral benefits" not to exceed $125.

On December 9, 1929, Elliott, an employee of the coal company, received an accidental injury while performing services arising out of and in the course of his employment. Falling coal drove the point of a pick into his leg, near the knee. On March 27, 1930, the referee found that Elliott's temporary disability had not ended, that it could not be determined at that time what the permanent disability consisted of, and that his average weekly wage was $10, and ordered compensation for temporary disability paid from December 20, 1929, during disability, in weekly installments of $5 each. The award was acquiesced in by all parties and payments were made in

accordance therewith. While Elliott was alive no further award was made, no application for review or for any additional or different award was made, and no further hearing was held. He died November 18, 1930, leaving no dependent. The next day the commission mailed notice of a hearing to be held on December 9, for the purpose of determining the "extent of permanent disability and termination of temporary disability." At the hearing a Mrs. A. Wilkinson testified that for eight years just prior to his death Elliott had boarded with her, and that when he died he was owing her a balance of $300. "Q. Will you tell us what the items are? A. It is for board at $45 a month. I received $5 a week from the compensation and I had him there before this accident." The referee made the following findings and order: "Decedent sustained an accident arising out of and in the course of his employment December 9th, 1929, * * *. He died November 15, 1930, and temporary total disability continued until the date of his death. He would have sustained a 100% loss of the left leg measured at the knee joint as his permanent disability. His death was due to acute dilatation of the heart, not the result of the accident. During his period of disability he had incurred an indebtedness of $300.00 to Mrs. A. Wilkinson, for room and board and necessary care. It is, therefore, ordered, that the respondents above named pay out of compensation due and unpaid, at the time of death, if any, and out of compensation due for permanent disability, the sum of $300.00 to Mrs. A. Wilkinson. It is further ordered that the respondents pay out of the compensation monies due, for permanent disability, not to exceed $125.00 funeral benefits." The findings and order were affirmed by the commission, except that instead of finding, as the referee did, that Elliott "would have sustained" a 100 per cent loss of the left leg, etc., it found that his permanent disability "consisted of" a 100 per cent loss of the left leg, etc.

To sustain its award, the commission relies upon the

following provisions of the Workmen's Compensation Act: Section 57 (C. L., §4431), as amended in 1923 (S. L. 1923, p. 738), provides, in part, as follows: "In case said injured employe or claimant leaves no dependents the Commission may order the application of any accrued and unpaid benefits up to the time of the death of such employe or claimant, paid upon the expenses of the last sickness or funeral of such decedent as may be ordered by the Commission, the preference in such payment to be to funeral expenses." Section 73 (C. L., §4447), as amended in 1929 (S. L. 1929, p. 655): "In case an injury results in a loss set forth in the following schedule, the injured employe shall, in addition to compensation to be paid for temporary disability, receive compensation for the period as specified, to-wit: * * * Loss of a leg at or above the knee, where the stump remains sufficient to permit the use of an artificial limb, 139 weeks." For convenience, the two sections will be referred to as sections 57 and 73.

The power of the commission to order such payments out of the weekly installments of the temporary disability award, if any had become due and payable and remained unpaid at the time of Elliott's death, is not challenged by the insurance company or the coal company. The only controversy is concerning the commission's power to make the award that it made after Elliott's death, so far as it dealt with permanent partial disability, allowing compensation based thereon, and ordering that the board bill and funeral benefits be paid out of the compensation so awarded.

The commission, in effect, contends that by virtue of section 73, supra, the right to compensation for permanent partial disability became vested in Elliott immediately upon his receiving the injury; that, as no part of such compensation had been paid to Elliott, the total amount was, at the time of his death, "accrued and unpaid benefits" within the meaning of section 57, supra; and that, as Elliott left no dependent, the commission

was empowered by the latter section to order the application thereof to the expenses of the last sickness and the funeral.

The question is one of statutory construction. The workmen's compensation statutes of the other states differ widely, and probably not one. of them is identical with the Colorado statute. We believe that a satisfactory conclusion may be arrived at by confining ourselves to a consideration of our own statute.

█ The title of the act is, "An act * * * providing for compensation and benefits to employes and their dependents for accidental injury to or death of employes," etc. The act provides for the payment of compensation to an employee who has been accidentally injured while performing a service arising out of and in the course of his employment, where the injury is not intentionally self-inflicted; and where death results from such an accident, the act provides for the payment of death benefits to his dependents. Claims for compensation or benefits cannot be assigned, and they are exempt from all claims of creditors, and from levy, execution and attachment, or other remedy for the collection of a debt. Only in a few cases, and they are specified in the statute, can the compensation be paid to others. There are provisions for the payment of medical and hospital expenses necessarily incurred by reason of injuries proximately caused by such an accident.

█ The purpose of the act is to cast upon the particular industry the burden resulting from accidental injuries sustained by its employees while performing duties arising out of and in the course of their employment. It was not intended to compensate employees for injuries or illness not due to their employment; or to pay benefits to their dependents when death results from such injuries or illness; or to pay the medical, hospital, funeral or other expenses incurred by reason of such injuries, illness or death. In such case, however, it is not unreasonable to pay to such dependents, or, where there are no

dependents, to pay on account of such expenses, any unpaid installments of compensation that may have become due and payable to the employee during his lifetime, under a disability award made during his lifetime. That is the purpose of section 57, a part of which is quoted above.

▮ The word "accrued" has several meanings. Thus, "accrued interest" has been held not to mean interest coupons that have not matured, i. e., interest coupons that have not become due and payable. *Toll v. Colorado National Bank*, 86 Colo. 529, 283 Pac. 778. And under a statute providing that rent "which had accrued at the time of his death * * * shall go to the executors or administrators," etc., it was held that the words "had accrued" signify "had become due and payable." *Fay v. Holloran*, 35 Barb. 295. And see *Cutcliff v. McAnally*, 88 Ala. 507, 7 So. 331; *Mundt v. Sheboygan, etc., Railroad Co.*, 31 Wis. 451. Section 57, supra, bears internal evidence of the fact that the word "accrued," in the part quoted, is used in the sense of due and payable. After the provision quoted above, it enacts that in case an injured employee or his dependent entitled to benefits. is declared incompetent or insane, any benefits "accrued or to accrue" may be paid to the conservator of his estate, etc. And there are other sections that recognize the distinction between "accrued" and "unaccrued." See C. L., §4437, as amended in 1929 (S. L. 1929, p. 651) ; C. L., §4438, as amended in 1929 (S. L. 1929, p. 652) ; C. L., §4439, as amended in 1929 (S. L. 1929, p. 653).

▮▮ At the time of Elliott's death were there any "accrued and unpaid benefits" within the meaning of section 57, supra? By "benefits," no doubt, "compensation" was meant, for compensation is awarded to an employee, whereas benefits (death benefits) are awarded to his dependents. As we understand the situation, all installments awarded for temporary disability that had become due and payable prior to Elliott's death were paid; if, however, any balance remained unpaid, it was

trivial and the insurance company and the coal company do not question the commission's power to order the disposition of such balance. If, in the accident, Elliott's leg had been severed or its use otherwise destroyed, and he also had sustained some other injury sufficient in itself to cause temporary disability, he would have been entitled, under section 73, supra, to compensation for the prescribed number of weeks for the loss of his leg and, in addition thereto, to compensation for such temporary disability. The idea is clearly expressed in a section dealing with temporary total disability. Section 4453, C. L., as amended in 1929 (S. L. 1929, p. 660), is as follows: "Where an injured employe sustains an injury covered by Sections 73, 74, 75 and 76 herein, but in addition thereto receives other injuries which are sufficient in their nature to alone cause temporary total disability, said employe shall receive, in addition to the amounts specified in said schedule, compensation for temporary total disability as long as said disability may be found to exist as a result of said other injuries." Although the present case is not one of temporary total disability, the same principle applies. It was not intended that for identically the same injury a person should receive concurrently two compensations, i. e., for temporary partial disability, and also for permanent partial disability. In the present case Elliott sustained only one injury, and it was of such a nature that the referee was unable to determine during Elliott's lifetime what the permanent disability consisted of. Presumably, it was uncertain whether the injury would or would not result in the loss of the leg; and, if it should so result, whether Elliott would lose the leg "at or above the knee, where the stump remains sufficient to permit the use of an artificial limb," in which event he would be entitled, under section 73, supra, to compensation for 139 weeks, or would lose the leg "at the hip joint or so near thereto as to preclude the use of an artificial limb," in which event he would be entitled, under that section, to compensation for 208

weeks. It was evident, however, that he would be temporarily disabled as a result of the injury to his leg, and an award was made on that basis. Elliott made no objection to that award. He did not apply for a review by the commission, and no change in the award was made, or applied for, during the lifetime of Elliott, nor did Elliott apply for any additional award. On the contrary, he acquiesced in the award, and up to the day of his death received and accepted without objection all, or substantially all, of the weekly compensation paid under the award. After his death the commission found that *"temporary* total disability continued until the day of his death," and, for the first time, the commission made a finding that his "permanent disability consisted of a 100 per cent loss of his left leg measured at the knee," and thereupon made an award of compensation for permanent disability, $300 to be paid to Elliott's landlady, and not to exceed $125 to be paid as "funeral benefits."

In the circumstances, there was no warrant for the award of compensation for permanent partial disability. The district court erred in affirming such award.

If, at the time of Elliott's death, there was an unpaid balance of the temporary partial disability award made prior thereto, that had become due and payable to Elliott in his lifetime, such balance was "accrued and unpaid" within the meaning of section 57, supra, and was applicable to payment "upon the expenses of the last sickness or funeral, * * * the preference * * * to be to funeral expenses."

The judgment is reversed, and the cause is remanded to the district court, with instructions to remand the cause to the Industrial Commission for further proceedings in harmony with the views expressed in this opinion.