CARLTON SHUFFIELD, BY NEXT FRIEND, V. DR. G. B. TAYLOR.

No. 6344.   Decided July 3, 1935.
Rehearing overruled July 24, 1935.
(83 S. W., 2d Series, 955.)

*E. A. Camp,* of Rockdale, *W. Ray Scruggs, Chester H. Johnson* and *Gail Whitcomb,* all of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that parents could not testify as to the absence of disease in their own child who had been in their constant custody. St. Louis S. W. Ry. Co. v. Lowe, 97 S. W., 1087.

It was error to hold that the hypothetical question propounded to plaintiff's experts were improper in that they did not include all the facts, and that there was no objection made to such evidence upon the trial nor in defendant's brief. Gulf C. & S. F. Ry. Co. v. Matthews, 66 S. W., 588; Texas & N. O. Ry. Co. v. Walker, 125 S. W., 99.

Where special issues are merely evidentiary and duplicitious they were properly refused by the trial court. Massachusetts Bonding & Ins. Co. v. Richardson, 27 S. W. (2d) 921; Monzingo v. Jones, 34 S. W. (2d) 662; Stinnett v. Paramount-Famous Corp., 37 S. W. (2d) 145, (Com. App.).

*E. A. Wallace,* of Cameron, for defendant in error.

The testimony of parents that child had had no disease was inadmissible. Ft. Worth Belt Ry. Co. v. Jones, 106 Texas, 345, 166 S. W., 1130; Western U. Tel. Co. v. Hughey, 118 S. W., 1130; Maning v. Mutual Life Ins. Co., 100 U. S., 693, 25 L. Ed., 761.

Special issues requested by defendant should have been submitted. Frost v. First State Bank & Tr. Co., 276 S. W., 222 (Com. App.); R. S., 2190.

MR. JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

This suit, by Carlton Shuffield, a minor about 19 years of age, his father as next friend, against Dr. G. B. Taylor, for damages resulting from alleged malpractice in connection with the performance of a tonsillectomy and a faulty diagnosis and treatment for adenoids and suppurating ears, resulted in judgment for plaintiff in the sum of $6250.00, which was reversed and the cause remanded by the Court of Civil Appeals. 52 S. W. (2d) 788.

It was alleged by plaintiff that defendant held himself out to the public as a specialist in the treatment of diseases of the ear, nose, and throat, and, *first*, that in connection with the performance of a mere tonsillectomy by defendant on plaintiff, defendant also removed his uvula, palate, and tonsillar pillars, thereby causing plaintiff to lose his power of speech; and, *second*, that at the time of the performance of the tonsillectomy, and in connection therewith, defendant made a faulty diagnosis and treatment of plaintiff for adenoids and supprating ears, thereby causing him to lose his power of hearing. Additional damages alleged were, that as a result of the operation and the faulty diagnosis and treatment, plaintiff had the mentality of a child about 6 years of age, although he was then about 19 years of age.

The first phase of the case was predicated upon two alleged theories of recovery: *(a)* That the removal of the uvula, palate and tonsillar pillars of plaintiff, at that time a child 4 years of age, without the consent of his parents, constituted an assault or trespass, for which defendant was liable in damages, without regard to any question of negligence; *(b)* that defendant negligent in removing plaintiff's uvula, palate, and tonsillar pillars while performing a mere tonsillectomy, because (1) he failed to use reasonable skill, care, and diligence in his professional work; (2) he failed to use approved methods and instruments in general use for the performance of the operation; and (3) he did not possess the experience, skill, knowledge, or ability to perform the tonsil operation.

The second phase of the case was predicated upon the alleged negligence of defendant, (1) in failing to discover in connection with the tonsillectomy that plaintiff had adenoids, and to recommend their removal to plaintiff's parents as a part of the tonsillectomy; and (2) the failure of defendant to properly treat plaintiff for adenoids and suppurating ears, the latter being alleged to have resulted from the diseased adenoids.

Defendant filed a general denial, a special denial that he did remove plaintiff's uvula, palate, and tonsillar pillars, and

a special plea that plaintiff's defects of speech and hearing were congenital, or that he was practically a deaf mute from his birth.

The jury found on special issues submitted to them, that the defendant did remove the tonsillar pillars of plaintiff or a considerable portion thereof, that such removal was a proximate cause of injury or damage to plaintiff; that the defendant did remove the uvula of plaintiff, that such removal was a proximate cause of injury or damage to plaintiff; that the defendant did remove the soft palate of plaintiff, that such removal was a proximate cause of injury or damage to plaintiff; that plaintiff was affected with adenoids at the time of the operation, which the defendant did not discover, through his negligence, and such negligence was a proximate cause of damage or injury to plaintiff; that defendant did not recommend removal of such adenoids, which was negligence and a proximate cause of damage to plaintiff.

The jury found further, that defendant was not, at the time he treated plaintiff, possessed of that reasonable degree of skill and learning as was ordinarily possessed by physicians in good standing, in the same general line of practice at said times in and about the City of Cameron or similar communities; that failure to possess such learning and skill was a proximate cause of injury or damage to plaintiff; that defendant, in the treatment of plaintiff did not use such appliances as were then used under the same or similar circumstances by physicians in good standing, in the same general line of practice in the City of Cameron or similar communities, which was negligence and a proximate cause of injury or damage to plaintiff; that the plaintiff's inability to speak and to hear in a normal manner, is not due to defects or causes existing at time of his birth.

The jury found further that the defendant was not guilty of gross negligence.

### OPINION.

*First:*—The father and mother of plaintiff testified to the physical condition of their son. The mother, after testifying that from immediately after the operation to the time of the trial, his speech was affected to the extent that he could be understood only with great difficulty, that he had never had any other operation, that the throat operation was the only one ever performed on him, that he had lived with her during his entire life, was asked, "I will ask you to state as to the

condition of Carlton's throat with reference to whether there was or was not any phlegm that appeared right after the operation," to which she answered: "Ever since the operation, why the phlegm has collected in his throat and at night gets out on his pillow. Q. Did that ever happen before the operation? A. No, sir, it never did. Q. State whether or not that condition began right after the operation? A. Yes, sir, right after the operation. Q. Has it, or has it not, continued ever since? A. Yes, sir, it has continued ever since." She was then asked this question, "Mrs. Shuffield, has Carlton outside of this condition of the phlegm you describe, has he ever had any kind of disease of his throat of any kind?" to which she answered "No, sir."

The father, after testifying that his son has never had an accident or injury of any kind to his throat, or to his ears or anything about his head, and that the operation in question is the only operation of the kind he has ever had, was asked the question, "Has Carlton at any time had any apparent—outside of adenoids and tonsilitis, has Carlton at any time had any apparent disease of his mouth or throat?", to which he answered "No, sir, never has."

The Court of Civil Appeals held that while the parents could testify as to matters relating to physical appearance or of matters of an outward nature, obvious to any person and particularly to his parents who were shown to have constantly associated with and cared for him, all his life, admission of the answers to the last above question to the mother and the last above question to the father, was error because the testimony was nonexpert; the court said, "whether a person has a disease is a question calling for professional or expert testimony, which rule would extend to any throat disease, and particularly to any disease which might cause the sloughing off or atrophy of the parts of the throat"—in other words, that the disease in question could be proven only by professional or expert testimony and not by that of non-expert parents.

This seems to be the principal ground of reversal, as other holdings of the Court of Civil Appeals are predicated upon the expert testimony and not by that of nonexpert parents.

1 We think the evidence was admissible; it did not come within the rules relating to expert testimony. It was the statement of a fact about which the parents were competent to testify.

In Pullman Co. v. Hoyle, 52 Texas Civ. App., 534, 115 S. W., at p. 319, (writ of error refused), the court said:—"her

father, with whom plaintiff's wife had lived from infancy, was competent to state the facts relative to her health and disposition," and "to testify that her health was good and her disposition bright and cheerful prior to the occurrence complained of, and the reverse was true since then."

In Vann v. Natl. Life & Accident Co., 24 S. W. (2d) Com. App., at p. 351, Judge Sharp, in ruling upon the admissibility of a husband's testimony that his wife was in good health as far as he could tell, said "the testimony shows that Vann had lived with his wife for many years and had full opportunity to observe her conditions of health and we think that the admissibility of that testimony by the trial court was not error."

In St. Louis S. W. Ry. Co. v. Lowe, 97 S. W. 1087, (writ of error refused), while the appellee was upon the stand, he was asked the following questions:   (1) If his wife, Celia, had ever had any cough or lung trouble prior to her exposure in defendant's depot; (2) Whether or not his wife had ever had any female trouble prior to the exposure in defendant's depot. These questions were objected to on the ground they were leading, suggestive, and called for the opinion of a nonexpert.

The court said:—"Whether appellee's wife had ever had a cough, lung or female trouble prior to her exposure at appellant's depot were questions of fact, about which he was competent to testify, and his testimony in relation thereto was the statement of a fact and not merely the expression of an opinion."

In Texas Imp. Ins. Assn. v. Perry, 35 S. W. (2d) 1087 (writ of error refused), appellee was asked "Now before this injury had you ever had that hernia in any degree at all?" which was answered "No, sir."   The Court said the question involved purely a fact affecting the weight and credibility and not the competency of the evidence.

In International & G. N. R. Co. v. Sandlin, 57 Texas Civ. App., 151, 122 S. W., 60 (writ of error refused), the plaintiff was asked "What is the condition of your wife's lower limbs now?" to which he replied "She suffers a great deal now.   She is crippled and can not walk.   She has been in bed or either in the rolling chair, and suffering all the time since that accident.   Her lower limbs are in a paralyzed condition now, and she hasn't any use of them and has no feeling in them."   The question and answer were objected to on the grounds that the witness was not a physician, had not qualified as an expert and therefore was not competent to speak on the subject.   The proposition following the assignment was "It was error to per-

mit appellee to testify that his wife was paralyzed without qualifying as a medical expert." The court in overruling that contention, said:

"The question did not call for the opinion of the witness, and the answer appears to be a statement of facts, and not an expression of an opinion or a conclusion. However that may be, it now appears to be well recognized that a non-expert witness may give his opinion on questions of apparent conditions of the body or mind, intoxication, insanity, sickness, health, etc. Such testimony is received in the particular cases or instances mentioned, because a mere description, without the witness's opinion, would convey an imperfect idea of the force, meaning, and inherent character of the thing described. San Antonio Trac. Co. v. Flory, 45 Texas Civ. App., 233, 100 S. W., 200; Texas & N. O. Ry. Co. v. Clippenger, 47 Texas Civ. App., 510, 106 S. W., 158; St. Louis S. W. Ry. Co. v. Smith (Texas Civ. App.), 90 S. W., 926."

In G. A. Duerler Mfg. Co. v. Eichhorn, 44 Texas Civ. App., 638, 99 S. W., 715 (writ of error refused), Judge Neill said:

"Courts and text-writers, without reference to any recognized rule or principle, all concede the admissibility of the opinions of nonprofessional men upon the questions of health and sickness. The question of good or ill health of an individual requires no scientific knowledge to enable one who is well acquainted with him to form an opinion upon it. One man hardly ever meets another without forming an opinion as to his health, which arises from his observation and the appearance of the particular individual. Therefore we have no doubt that the following testimony of Mrs. Lusk who had known plaintiff for 12 years, viz.: 'She was always in good health while I have known her up to November 14, 1904; her health was always the same up to that time; since November 14, 1904, her health has not been good at all; she has fallen off in weight; this condition of her health has lasted ever since November 14, 1904,' was competent to show the state of plaintiff's health before and after the date of her injury. Besides, the witness testified specifically to facts which, if true, show the ill health of plaintiff after she was struck by the falling barrel. Even as to questions involving scientific knowledge, such as mental condition, etc., a nonexpert may testify as to his opinion, if he gives the facts upon which it is based. Galloway v. S. A. & G. Ry. Co. (Texas Civ. App.), 78 S. W., 33."

In San Angelo Water, Light & Power Co. v. Baugh, 270 S. W., 1101, Judge Blair, in passing upon the admissibility of

certain testimony by a nonexpert witness with reference to the apparent condition of an injured party quotes with approval, the following as the general rule on the subject:

"A nonexpert witness 'may state the apparent physical condition of a man, * * * or as to what are more distinctly inferences from animate bodily phenomena, as the existence of a state of apparent sickness or disease. Such an observer may also state a change in apparent condition, whether the change is from sickness to health, or from health to sickness, or from bad to worse, or from worse to better. He may also infer and state that a person's ability to help himself or his faculties or the use of his limbs or other parts of his body, or his earning capacity has or has not been impaired.' 17 Cyc., 87. Yates v. St. Louis S. W. Ry. Co. of Texas (Texas Civ. App.), 184 S. W., 638; G. H. & S. A. Ry. Co. v. White (Texas Civ. App.), 216 S. W., 265; Texas Midland R. R. Co. v. Ritchey, 49 Texas Civ. App., 409, 108 S. W., 732; Cunningham v. Neal, 49 Texas Civ. App., 613, 109 S. W., 455; Texas-Mexican Ry. Co. v. Creekmore (Texas Civ. App.), 204 S. W., 682."

In 19 Tex. Jur., p. 354, sec. 231, the general rule is stated to be:—"A witness need not be an expert in medical matters in order to be competent to express an opinion as to the physical condition of himself or of another."

2. The opinion of those who are familiar with the person in question or have frequent opportunities of observing him is admissible as to his general health, strength and bodily vigor, or on the other hand his feebleness or apparent illness, or his change in physical condition from one time to another, though the witnesses are not experts. 11 R. C. L., p. 606, sec. 31; 22 C. J., p. 618, sec. 711.

In the Arkansas case, Kansas City Southern Ry. Co. v. Cobb, 118 Ark., 569, 178 S. W., 383, it was said: "Where one person is acquainted with another and they come in contact with each other frequently, it is not a matter of expert knowledge for one to tell whether the other appears to be sick or well. These are matters of common experience and observation. And a nonexpert witness, after stating the facts upon which his opinion is based, may even give his opinion in such matters," citing Jones on Evidence, vol. 3, sec. 360 et seq., 366.

In Van House v. Canadian Northern R. R. Co., 155 Minn., 57, 192 N. W., 493, 28 A. L. R., 357, the Supreme Court of Minnesota held that permitting a nonexpert witness to testify that for four years before the accident, plaintiff's health had

been good, was not error, he having seen her almost daily during that period.

The parents were not called upon to make a diagnosis but to give testimony as to the apparent presence of any disease of their child's throat, not in a scientific sence, but as a statement of a simple fact. 1 Greenleaf Evidence (16th Ed.), p. 430, sec. 430c. This could not have misled the jury and we think was admissible. Lawson, Expert & Opinion Evidence, p. 470.

*Second:*—Upon the erroneous assumption that the parents' testimony stated above, was inadmissible, the Court of Civil Appeals held it was error to assume, in propounding certain hypothetical questions to physician experts, that plaintiff had no disease of the throat.

3 In this connection, it may be stated that Dr. Baker (who qualified as an expert) examined the plaintiff some time before the trial, and testified not only in answer to hypothetical questions, but also as to the condition of plaintiff and asserted positively that both the anterior and posterior tonsillar pillars on the right and left side were absolutely destroyed and the uvula absolutely obliterated. He was then asked the question "What did you find with reference to the soft palate," to which he answered "That includes the uvula, the soft palate." He said further that there is none of the soft palate left in plaintiff's throat; that the different ways, other than an operation, by which the tonsillar pillars could get out of a boy's throat would be by disease, serious atrophy, or a disintegration of the tissues; that from the examination of plaintiff's throat which he made, he could tell absolutely whether or not they had got out by disease, that there was no evidence in the throat showing they came out by disease, and there was no doubt in his mind that they were cut out or torn out. He testified similarly with reference to the uvula and the soft palate; had the uvula and soft palate rotted out, there would be indicated a general sloughing off, the elements of disease and unevenness on the surface.

He testified also that the removal of the tonsillar pillars, the uvula and soft palate, would have a marked effect on the voice, its resonance, the muscles of the throat to help speech and articulation, all of which is a factor from which the plaintiff is now and for many years has suffered.

Dr. Baker's testimony alone would justify the assumption in the hypothetical questions negativing the theory of disease.

4   A hypothetical question should be so framed as to recite all the facts in evidence relevant to the formation of an opinion, and then assuming the facts to be true, the witness should be asked, if able to form an opinion therefrom, to state such opinion.

A question is not necessarily improper because it includes only a part of the facts in evidence, provided it embraces enough of them to enable the witness to formulate an intelligent opinion.

The question need not embrace all the facts under the conflicting theories of the case; each party may embody in his questions those facts which the evidence may tend to support.

If the opposing counsel desires to elicit the expert's opinion upon facts which the evidence tends to support, he may do so upon cross-examination, and facts omitted from a hyopthetical question on direct examination may be embodied in questions propounded on cross-examination.   19 Tex. Jur., p. 438 et seq., secs. 285 to 289, 296, 297; 22 C. J., p. 706, sec. 795 to p. 716, sec. 805, p. 722, sec. 813; 11 R. C. L., p. 579, sec. 11; Liner v. U. S. Torpedo Co., 12 S. W. (2d) 552 (Com. App.)

In Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, at p. 109, 17 S. W., 834, it is said "Even though the hypothetical case as stated does not cover the full range of the facts, this alone would not make the question objectionable, provided enough is given upon which the witness can formulate an intelligent opinion.   The failure of an accurate statement of all facts in the case in propounding the hypothetical question does not render it inadmissible, but simply affects the weight of the testimony in response to the question;" and in Gulf C. & S. F. Ry. Co. v. Compton, 75 Texas, at p. 673, 13 S. W., 667, the court stated:   "We understand the rule to be that the opinion of an expert upon a hypothetical case will be excluded, unless there be evidence tending to prove the supposed facts; but we have found no authority which holds that a hypothetical case must embrace every fact proved, or which there is evidence tending to prove.   In Filer v. Railway, 49 New York, 42, it is said:   'Some latitude must necessarily be given in the examination of medical experts and in propounding hypothetical questions for their opinions, the better to enable the jury to pass upon the questions submitted to them.   The opinion is the opinion of the expert, and if the facts are found by the jury as the counsel by his question assumes them to be, the opinion may have some weight, otherwise not.   It is the privilege of counsel in such cases to assume within the limits of

the evidence any state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed.' The facts assumed in the question before us were established by the evidence in the case. If counsel for defendant desired the opinion of the witnesses as to the safety of operating a train between the hours when only two other trains were to be encountered, he could upon cross-examination have asked his opinion based upon that state of facts. We think there was no error in admitting the testimony."

5 The Court of Civil Appeals held that the hypothetical questions propounded to the experts were improper because they did not include or refer to the fact testified to by the boy's mother that he had continuously, since the date of the tonsillectomy, discharged phlegm from his throat and mouth, on the ground that to the lay mind this discharge of phlegm would be evidence or symptom of disease, but whether it was sufficient evidence or symptom of disease which might have caused the sloughing off, or atrophy of the uvula, palate and tonsillar pillars, or such considerable portions thereof as would deleteriously affect the throat, was a matter proper for expert testimony.

No such objection was made either in the trial court or Court of Civil Appeals and therefore should not have been considered. Wheeler v. Tyler S. E. Ry. Co., 91 Texas, 356, 43 S. W., 876; Texas & N. O. Ry. Co. v. Walker, 58 Texas Civ. App., 615, 125 S. W., 99; 3 Tex. Jur., p. 188, sec. 126. However, as shown above, the point could have been developed on cross-examination of the experts, on the subject.

*Third:*—The defendant plead that plaintiff "at the time of his birth was a defective in the respect of speech, hearing and intellect; that he was practically a deaf mute from congenital causes at the time he was brought to the defendant for examination in 1916 and in 1921. That the said Carlton Shuffield's inability to speak and hear was due to such congenital defects, preexisting at the time the defendant removed his tonsils in 1916, which operation was skillfully and successfully done, and which defects were continuing when he was brought to this defendant for examination in 1921; that this defendant did not remove or injure said Carlton Shuffield's uvula, palate and tonsillar pillars in the operation performed by him in 1916, and that he did not extract the said Carlton Shuffield's tonsillar pillars, and that any laceration thereof in said operation was only such as necessarily attended the removal of the tonsils; and that no act done or committed by defendant in said

operation and that none of the matters charged against this defendant having been omitted by him at said time, or at the time said Carlton Shuffield was brought to him for treatment in 1921, did in any respect cause, aggravate or increase the said Carlton Shuffield's inability to hear or speak, but, to the contrary, that the general health of said Carlton Shuffield and his diseased ears were *held* and improved by said operation and by said treatment."

6 The *corresponding* ultimate issues therefore, as made by the defendant's pleading, were whether plaintiff's inability to speak or hear in a normal manner was due to congenital causes, i. e. existing from birth, (Speer on Special Issues, sec. 92), covering which, the court submitted the following, viz:

"Special Issue No. 22. Do you find from a preponderance of the evidence that the inability, if any, of Carlton Shuffield, to speak in a normal manner is due to defects or causes existing at time of his birth? Answer 'Yes' or 'No.'

"Special Issue No. 23. Do you find from a preponderance of the evidence that the inability, if any, of Carlton Shuffield to hear in a normal manner is due to defects or causes existing at time of his birth? Answer: 'Yes' or 'No'."

The jury answered "no" to both issues.

Complaint is made, that the trial court refused to submit to the jury certain special issues requested by defendant, viz:—

"1. Was Carlton Shuffield's deafness, if he was deaf, either partially or wholly existing before the defendant operated upon him, as shown by the evidence? Answer 'Yes' or 'No' as you may find from a preponderance of the evidence.

"2. Was Carlton Shuffield's hardness of hearing, if he was hard of hearing, caused by a disease existing either before or subsequent to the operation upon him by defendant, as shown by a preponderance of the evidence? Answer 'Yes' or 'No' as you may find from a preponderance of the evidence.

"3. Was Carlton Shuffield's inability to speak, if you find he is unable to speak in whole or in part, existing before and at the time the defendant operated upon him? Answer as you may find from a preponderance of the evidence.

"4. Was Carlton Shuffield's inability to speak, if you find he is unable to speak in whole or in part, caused by disease existing either before or after the operation upon him by defendant? Answer 'Yes' or 'No' as you may find from a preponderance of the evidence."

We think these were purely evidentiary issues (Speer on Special Issues, Sec. 106), and therefore properly refused; only

ultimate issues may be submitted (Id., Sec. 91).

It would be impossible, to tell from the answers, if in the affirmative, whether the jury found the disease existed in whole or only in part, and if in part, to what extent, and whether the disease existed before or after the operation, and, if the latter, whether it was the result of the operation.

*Fourth:*—Depositions of Dr. Key were taken. Cross-interrogatory No. 37, as follows:—"Your records do not indicate, do they; that there was anything inherently wrong with Carlton Shuffield's power of speech" and the answer thereto were excluded by the trial court; the Court of Civil Appeals held this was error.

Dr. Key had testified that he had not the slightest personal recollection of Carlton Shuffield or any examination of him or anything at all about the matter except what his office memorandum card showed. This card, dated July 6, 1915, read substantially as follows:—"Hard of hearing. Unable to talk well. Says a few words like 'Mama,' 'Papa,' 'all gone,' etc. Ad. Removal advised." In the excluded answer Dr. Key stated that the memorandum was based upon the statement given him by the person who brought the patient to him, and does not mean that he (Dr. Key) stated that the patient could say those words. To quote from the answer "I explain this in detail because it might appear that the above was my opinion, when as a matter of fact, it is merely the history of the case as it was related to me."

7  We think the trial court correctly excluded the answer, objections being that it was not responsive, went into a long dissertation on matters not inquired about, that the answer is hearsay and a conclusion of the witness, the record speaks for itself and is the best evidence, the witness having already testified in answer to other questions that he knew nothing except what his record shows, and the record is in evidence.

8  Having acquired jurisdiction of this case it becomes our duty to examine all the assignments of error made by the appellant in the Court of Civil Appeals to ascertain if the judgment of the trial court should have been reversed upon any of the grounds assigned, other than those specified by the Court of Civil Appeals. Wheeler v. Tyler S. E. Ry. Co., 91 Texas, 356, 43 S. W., 876.

One hundred and twenty-three assignments of error are asserted by appellant, supported by seventeen propositions, principally dealing with questions involving testimony by

physicians, the sufficiency of evidence warranting submission of special issues and the refusal of a peremptory instruction for defendant.

We have carefully examined all such remaining assignments and propositions and conclude they should be overruled. The length of this opinion precludes a detailed discussion of each.

The judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

Opinion adopted by Supreme Court July 3, 1935.

Rehearing overruled July 24, 1935.