## ENGLISH v. McCORKLE.
### No. 2188.

Court of Civil Appeals of Texas. Eastland.

Nov. 21, 1941.

Rehearing Denied Dec. 19, 1941.

Callaway & Reed, of Dallas, for appellant.

Chas. O. Betts, of Austin, and Cecil D. Redford, of San Antonio, for appellee.

LESLIE, Chief Justice.

Sam McCorkle, receiver for Lloyds America, filed this suit against C. T. English to recover $500 due for insurance premium on a workmen's compensation policy issued June 14, 1937. English answered admitting the $500 indebtedness, tendered the received $100, and sought to have the balance of the claim offset by a judgment against Lloyds which English alleged he had acquired by assignment from Jean McConnell. The trial was before the court without a jury, and a judgment was rendered in favor of the receiver for the $500 and interest, and the offset was disallowed. English appeals. There are no findings of fact or conclusions of law in the record.

This appeal presents two questions: (1) Did Jean McConnell assign his judgment against Lloyds to English prior to March 17, 1939 (when Lloyds was adjudged insolvent and the receiver appointed)? (2) Can employee make a valid assignment of a judgment recovered in a case involving compensation payable under the Workmen's Compensation Act? The appellee insists, in the first place, there was no assignment as a matter of fact, and second, as a matter of law there could be no assignment of the claim or judgment in favor of an employee under Workmen's Compensation Law, that such an assignment or attempt to assign would be void.

While said policy of insurance was in effect, appellant had in his employment Jean McConnell, who was injured in the course of his employment. McConnell's claim for compensation was presented to the Board, carried to the District Court, and there a judgment (by agreement) was entered in his favor on February 8, 1939, for $525. At that time McConnell received $125 cash and Lloyds agreed to pay the balance in $100 payments per month, beginning March 8, 1939. On that date McConnell owed appellant English the sum of $406 on account of advances made by said employer to McConnell during a time in which Lloyds suspended or refused to pay McConnell a

$11.50 weekly compensation which they paid him for several weeks immediately after the accident. McConnell retained the $125 cash paid him at date of judgment, and English alleges by way of offset that the balance of the McConnell judgment (about $400) was transferred to him for said advances and that he is entitled to offset that amount against the unpaid balance of insurance premium for which the receiver was suing him.

█ Appellee asserts there is no testimony that McConnell ever assigned the balance of his judgment to English. McConnell testified he made no written assignment, being asked:

"Q. Did you make an outright assignment of this judgment to him? A. Only verbally, that when the money came in I would turn it over to Mr. English.

"Q. What was the agreement if the money never did come in? A. Wasn't any; I would just have to pay that back out of my wages.

"Q. Have you paid him back any of the $406? A. I have not.

"Q. Now you testified when the first payment was not made that you asked Mr. Barber to write Lloyds America? A. Yes sir.

"Q. Did you consider that that judgment was yours at that time? A. Yes sir.

"Q. As of March 8 you considered it yours? A. Yes sir."

The "first payment" referred to was the first $100 installment to be paid under the contract entered into at date of judgment February 8, 1939. McConnell further testified he gave Lloyds America no notice of the alleged assignment.

On March 9, 1939, a settlement was made between Lloyds America and C. T. English of the latter's disputed liability for premiums, by the terms of which English paid Lloyds America $129.52 in cash and agreed to pay $500 in addition, $250 in thirty days and $250 in sixty days thereafter. At that time English did not assert his right to the $400 offset by reason of McConnell's judgment, although that judgment had been obtained about February 8, 1939, at which time it is alleged and testified McConnell expressed his wish to reimburse English for the $406 advances made to him by applying the balance of the judgment in liquidation thereof. Further, at the time (February 8th) judgment was entered in favor of McConnell, one R. F. Barber, agent of C. T. English, was advised by the attorney for Lloyds America that an assignment of the judgment was invalid and would be void and that the payment on the judgment would be made direct to Jean McConnell but that the company would forward the checks to Jean McConnell in care of C. T. English and that it would be up to English to get McConnell to pay him as he, McConnell, received payments on the judgment. In this letter Lloyds signified a willingness to cooperate with English in the collection of his debt from McConnell.

There is no evidence of any character of assignment, equitable or otherwise, between March 9 (when English and Lloyds reached their agreement) and March 17, 1939, when Lloyds was adjudged insolvent and the receiver appointed.

We will not go further into the testimony, and have merely pointed out the above circumstances to indicate the nature of the testimony as a whole on the issue of assignment vel non. There is much substance to appellee's contention that if an assignment took place at all it occurred February 8, the date of McConnell's judgment, or thereabouts when he signified a willingness or possible intention to devote the balance ($400) of the judgment to the payment of English for the advances above stated. However, when we consider his testimony, from which the above excerpt is taken, we find that a month later, March 8, when the first $100 installment was not paid, he had R. F. Barber, agent of English, to write the company calling its attention to this default in payment, and on that date, March 8, he considered the balance of the judgment was still his. So proceeding upon the theory he could in law assign the judgment, it appears that the testimony presented a strict issue of fact as to whether he did or did not assign the judgment. The trial court has made no findings of fact, and it is easily possible to account for the judgment on the theory that the court found in favor of the appellee on conflicting testimony.

█ In response to the second question, we are of the opinion that an employee cannot make a valid assignment of a judgment recovered in a case involving compensation payable under the Workmen's Compensation Act. The appellant proceeds upon the theory that the employee's rights therein are personal to him and that he can

waive such exemption in favor of another, for instance, the appellant. Our conclusion, to be presently expressed, will be based upon the assumption that McConnell made some character of assignment of the balance of his judgment to English at such time as would render it a valid offset in favor of the latter, if the law permitted him to do so.

Art. 8306, sec. 3, Texas Revised Civil Statutes, 1925, provides in part as follows: "All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void."

The appellant insists that the exemption provided for in this statute was personal to McConnell and that he had a right to waive it in favor of the appellant. In support of his contention he cites Pickens v. Pickens, 125 Tex. 410, 83 S.W.2d 951, and Traders & Gen. Ins. Co. v. Boysen, Tex. Civ.App., 123 S.W.2d 1016. These authorities do not establish the proposition contended for by the appellant. The case of Pickens v. Pickens deals with the death benefits payable under the act. That authority merely holds that one-half of compensation awarded to injured employee *prior to his death* was not exempt to family or widow and minor children and unmarried daughters after the death of father, and that at employee's death such money was released from exemption in his favor and passed to his heirs subject to payment of community debts, which employee's widow as survivor in community had the right to pay, although she had not qualified as survivor in community.

The material holding in that case is briefly expressed in this language [125 Tex. 410, 83 S.W.2d 955]: "Therefore, at the death of Mell Pickens [injured employee] this money was released from the exemption in his favor and passed to his heirs subject to the payment of community debts." That is, the exemption did not continue to operate after his death in behalf of others. Hence, the Pickens case determines no question of law applicable to or decisive of the instant case on the power or right of an employee to assign a claim or judgment based upon compensation for injury.

Neither does the opinion in Traders & Gen. Ins. Co. v. Boysen, supra, support appellant's contention that the exemption provided by the statute was personal to McConnell and that he had a right to waive the same and assign the claim or judgment to English. This opinion does hold "Where father and mother of deceased workman were divorced, father was entitled to waive his rights to compensation in favor of the mother and to assign his rights to her." [123 S.W.2d 1018]. That case was dealing with compensation payable for the *death* of an employee. The assignment was not made by the injured employee, as in the instant case, but by a beneficiary who took under the law of descent and distribution. It is stated by the court in that case that the provisions of sec. 3, of Art. 8306, prohibiting assignments of claims, would not control assignments of death claims and further holds that inasmuch as a claim for death is "complete, absolute and vested", it was, therefore, subject to assignment. That opinion was dealing with the death claim payable under sec. 8a of said article. Whatever may be the rights of the beneficiaries under the law of descent and distribution to compensation awarded in a death claim, clearly a different rule is provided by statute, sec. 3a, with respect to a claim or judgment *still in the hands of the injured employee*. As to him, the statute states in clear and simple language that "any attempt to assign the same shall be void." Said provision of the law is not attacked on any constitutional grounds, and we are not aware of any lack of authority in the Legislature to enact such provision of the law. We are of the opinion that the statute means exactly what it says and that McConnell had no authority to assign his judgment to English and any attempt to do so was, in the language of the statute, void.

In the Law of Workmen's Compensation by Schneider, Vol. 2, p. 2103, it is said that "The acts of all the States except two provide that compensation awards or claims for compensation are non assignable." We have not been able to fully verify the correctness of this statement but such would seem to be the case. 71 C.J. p. 924, sec. 673. That such statutes should be so construed we cite: Pacific Elec. Ry. Co. v.

Commonwealth Bonding & Cas. Ins. Co., 55 Cal.App. 704, 204 P. 262; Dunscath v. Nevada Industrial Commission, 52 Nev. 104, 282 P. 879 (statute applicable not only to original award but to judgment in court as well); Employers' Mut. Ins. Co. v. Industrial Commission, 89 Colo. 475, 3 P.2d 1079; Prime v. Dunaway et al., 164 Tenn. 396, 50 S.W.2d 223 (award not assignable even after judgment); Workmen's Compensation Board v. Abbott, 212 Ky. 123, 278 S.W. 533, 537, 47 A.L.R. 789; Mackin v. Detroit-Timkin Axle Co., 187 Mich. 8, 153 N.W. 49; Forkas v. International Silver Co., 100 Conn. 417, 123 A. 831.

In the case of Mackin v. Detroit-Timkin Axle Co., supra, the section forbidding assignments of claims for compensation together with the entire Compensation Act of Michigan was before the court and in upholding the validity of the section prohibiting assignments (and other sections of the act under attack) the court said [187 Mich. 8, 153 N.W. 56]: "These restrictions in the act, as applied to those who submit to its provisions by election, certainly cannot be held unconstitutional. They were deemed by the Legislature proper and necessary to safe-guard the interests of the class for whose benefit largely this act to 'promote the welfare of the people of the state' was passed; they are germane to the purpose of the act, and in the light of conditions previously existing in litigation over personal injuries to workmen, of which courts of last resort have taken judicial notice in construing workmen's compensation acts, are beneficial and appropriate, if not essential, to an efficient administration of the law."

The precise point (nonassignability of right to compensation, etc.) has not been decided in this State. At least, attorneys for the appellant and appellee cite no authority definitely in point, and we have found none. However, our conclusion on the proposition, or our interpretation of the statute, is believed to be clearly reflected by or implied from the opinion of our Supreme Court in Federal Surety Co. v. Pitts et al., 119 Tex. 330, 29 S.W.2d 1046, 1049, in answer to certified questions propounded with the view of determining whether or not heirs of an employee were entitled to the unpaid installments of compensation for loss of an eye accruing after the death of the employee from another cause. The inheritability of such installments by the heirs was the sole question for consideration, but in the discussion of that question the court used significant language reflecting its views on the statute forbidding the assignment of such claims, etc. In the Pitts opinion, it is said: "But for the fact that he, by the terms of the contract, is deprived of the right to assign the written instrument, he could transfer it to another for a valuable consideration, or give it away, and, according to the rules governing contract, the transferee or donee would occupy the same relation to the instrument as the original employee occupied. It is true that the general rule is that which is not assignable is not inheritable, but all the courts which have discussed this character of law with reference to this particular provision hold that the right to compensation for specific injuries does not die with the employee, and also hold the fact that this right *is not assignable* is not a material one in determining its inheritability." (Italics ours.)

The opinion in the Pitts case quotes at length from the Supreme Court of Idaho in Haugse v. Sommers Bros. Mfg. Co., 43 Idaho 450, 254 P. 212, 51 A.L.R. 1438, and in part that quotation is: "'* * * Ordinarily causes of action which are not assignable do not survive.' 1 C.J. 175. Claims for compensation are based on the statute, and are made nonassignable for the benefit of those entitled to compensation. But it does not follow from the fact that such claims may not be assigned that the rights we are here concerned with do not survive."

Upon the conclusions announced in the Pitts case the Supreme Court, on the same day, disposed of the appeal in Morris v. Southern Surety Co., 29 S.W.2d 1051.

Likewise, the federal statutes, ch. 15, providing compensation for injuries to employees of the United States, forbid assignments of such claims and declare "any assignment of a claim for compensation under this [chapter] shall be void * * *." U.S.C.A. Title 5, § 775.

█ It follows that we are of the opinion that on either one of the two grounds discussed the judgment of the trial court is sustainable. It is, therefore, affirmed.