William James **LARSON**, Appellant,

v.

Leila L. **LARSON**, Appellee.

No. 15132.

Court of Civil Appeals of Texas.

Dallas.

June 22, 1956.

Henry D. Schlinger, Dallas, for appellant.

Caldwell, Baker & Jordan and Robert P. Woodruff, Dallas, for appellee.

YOUNG, Justice.

Initially the suit was by appellant husband for divorce on ground of three-year abandonment, for partial custody of minor child, and division of community property; with cross-action by defendant wife for similar relief, pleading cruel treatment and abandonment, likewise seeking custody of child and property division. Petition of Larson was voluntarily dismissed prior to trial, with hearing of cross-action to a jury and later decree of divorce, duly brought up for review.

Consistent with jury answers, the court found that William James Larson had been guilty of excesses and cruel treatment toward defendant Leila L. Larson such as to render insupportable further living together of the parties; that $160 per month was a reasonable sum to be paid by Larson for support of their minor child, Catherine Ann Larson, age 4½ years at time of trial, payable semi-monthly in $80 installments until 18 years of age; granting custody to the mother with right of reasonable visitation by appellant, and making itemized division of community property, stocks, moneys, automobile, etc. Mrs. Larson was allowed the sum of $1,000 as reasonable expense of services performed by her attorney in said cause.

In primary points, appellant asserts the lack of evidence (or its insufficiency) as justifying a divorce; necessitating a detail of testimony deemed material: The parties were married in September 1948 at Manhattan Beach, California; plaintiff being an American Air Lines Pilot based at Los Angeles and with flights east. The little girl, Catherine Ann, was born in September 1950 with congenital disability to hip, requiring corrective casts and constant orthopedic treatment. The separation occurred in March 1951 with Larson's transfer to Dallas-Fort Worth by his employer;

wife and child remaining in California, in which connection Mrs. Larson testified::

"Now, during the period of time from September 18, 1948, until on or about March 28, 1951, was your marriage a success? * * * A. No. * * *

"Q. (By Mr. Shaw) Mrs. Larson, I believe you answered that your marriage was not happy while you were living with Mr. Larson. What caused the marriage to be unhappy? A. Well, right from the beginning we didn't get along. * * *

"Q. (By Mr. Shaw) You have stated that you were not happy while you were married to Mr. Larson. What caused this marriage to be unhappy? A. Well, right from the beginning we didn't get along. He was always nagging about something. I never did or said anything right. I didn't know anything. He was very moody and he didn't like to talk. He was moody when with his old friends in our home and we couldn't discuss anything because when I would give my reason— * * *

"The Witness: We just never could get things straightened out because I spent most of my marriage in tears and unhappiness. * * *

"Q. And during this period of time did he leave town on occasion? A. Yes.

"Q. And when he would come back what would be the results of your previous arguments? A. Well, it was always the same. It was a relief when he would go out.

"Q. All right. Did Mr. Larson ever strike you? A. No, he never actually hit me. Sometimes I thought he was going to, but he didn't.

"Q. All right. Did he ever threaten to strike you? A. No, he grabbed me as if to, but he never hit me.

"Q. Did he ever shake you? A. Kind of when he grabbed me.

"Q. All right. As the result of this continual arguing, Mrs. Larson, how was your physical condition affected, if it was? A. I lost a lot of weight, over thirty pounds, and I was ill, developed into asthma. * * *

"Q. You say you developed an asthmatic condition? A. Yes, sir. * * *

"Q. Mrs. Larson, up until your marriage to Mr. Larson had you ever suffered any serious physical disability? A. No.

"Q. Were you under the care of a doctor in California? A. Yes.

"Q. And approximately how long were you under the doctor's care? A. I have been under several. At the time of our marriage and our separation I was under Dr. Starnes' care."

Birth of the child, said Mrs. Larson, was a complicated event, she leaving the hospital so ill that dismissal was conditioned on a month's home care and personal attention; that her mother came to assist with the baby but left after two weeks because of inability to get along with Larson; he then offering to help, doing so for several days, then refusing further assistance saying " * *. * that other women got right up after they had their babies and worked and he didn't see why I couldn't." After the marriage there were times that they did not speak to each other; that when Larson suggested the removal to Texas she became concerned "because I knew our marriage was on no basis that I wanted to go on living like that, that I just couldn't continue any more." She told of Larson's regular airline flights to Los Angeles, visiting her and repeatedly asking that she come to Texas and live with him; and "I told him that I wanted to straighten our marriage out before I came over and he said there was nothing to discuss, and I said that until he could talk to me, would he give me some money at least for the baby, a few dollars * *. * Well, due to the way our marriage was and my health,

I couldn't go on any longer * * * and when I wanted to straighten it out he wouldn't give me any money to live on. He said 'Let your family support you,' which they did."

According to Mrs. Larson, appellant provided her no money or means to come to Texas from 1951 to 1954 (when he sent a pass); nor furnished support for herself and daughter in California; that in 1952 he sent them $100 per month for nine months "to obtain an income tax deduction"; in 1954 sending $1,000 to pay back bills and a $120 doctor bill; in 1951 and 1955 no assistance; that during these years he was earning from $550 to $738 per month but she had to turn to her family for support. Appellee testified to high medical outlays for the child, to operation for its tonsils and congenital deformities; to its wearing of casts, braces, corrective shoes, the upkeep approximating $300 per month; that witness became unable to maintain a separate home and moved in with parents, looking to them and an uncle for necessities; that all efforts at reconciliation proving unsuccessful, she had finally determined that a further living together with appellant would be insupportable. Mrs. Larson had filed suit in California for divorce and custody of child which she dismissed at time of the 1954 payment by appellant of $1,000 during course of final efforts to salvage the marriage. Cross-plaintiff testified to expenditures of approximately $3,000 on wife and child since 1951; of numerous attempts to "make up" through the years; further, that at the 1954 meeting a reconciliation had been fully agreed upon but not consummated by the wife's removal to Texas.

■ Article 4629, § 1, V.A.C.S., provides that a decree of divorce may be granted "Where either party is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable." Procedure under Art. 4632 is that: "Suit shall not be heard or divorce granted before the expiration of thirty days after the same is filed. In all such suits the defendant shall not be compelled to answer upon oath nor shall the petition be taken as confessed for want of answer, but the decree of the court shall be rendered upon full and satisfactory evidence, upon the judgment of the court affirming the material facts alleged in the petition. Either party may demand a jury." The following settled rules are coincident: (1) That Art. 4629 must be strictly construed and a decree should not be allowed on trivial matters or disagreements; (2) that in matters of divorce the evidence must appear full and satisfactory to the trial court and appellate court as well; but that under the wide discretion reposed in the trial court by the statute, its judgment is subject to revision only on showing of a clear abuse thereof. Darsey v. Darsey, Tex.Civ. App., 196 S.W.2d 524; Kreiter v. Kreiter, Tex.Civ.App., 137 S.W.2d 184. To say the least, its conclusions are entitled to great deference. Mortensen v. Mortensen, Tex.Civ.App., 186 S.W.2d 297; Gomez v. Gomez, Tex.Civ.App., 234 S.W.2d 941. (3) That it is impossible to lay down any precise rule by which to decide, under a given state of facts, whether legal cruelty does or does not exist; but where there is no physical violence by the husband, to entitle a wife to a divorce, she must show cruel treatment such as will produce a degree of mental distress that threatens to impair her health. Eatman v. Eatman, 75 Tex. 473, 12 S.W. 1107.

■ Turning to the case at hand, appellant strongly contends that no specific acts of cruelty are alleged or testified to; that no more than arguments and disagreements are involved, the parties simply not being able to "get along." While the testimony complained of may be lacking in definiteness, cumulative effect of the husband's acts and omissions over the years in question undoubtedly raise a fact issue of statutory cruelty and we are not disposed

to disturb the findings of both court and jury that the result was such as to render insupportable a further living together of these parties. As recently held by this Court in Crum v. Crum, Tex.Civ.App., 282 S.W.2d 280, 282: "The evidence, without detailing it, favorable to the trial court's judgment, was that from then on they did not get along; fussed, fumed, and fought practically from the beginning. There was conflicting testimony as to who caused this condition, but without detailing it, the evidence in our opinion made a question of fact for the jury on cruel treatment and the jury found such issue against appellant. Our detailed examination of the record convinces us that we cannot hold that the evidence was not full and satisfactory, or that the trial court abused his discretion in entering judgment on the jury's verdict."

Further points of appeal have been carefully considered but will be disposed of briefly: (1) There was no condonation as a matter of law of the cruel treatment alleged and relied upon by appellee; appellant charging repeated acts of cohabitation since October 1954. Such relationship was denied by Mrs. Larson; both court and jury finding in the negative on such issue. (2) The court did not err in permitting Mrs. Larson to testify that on account of differences with husband she had lost weight and developed asthma. The term "asthma" was no more than descriptive of a resultant physical condition concerning a not unusual ailment. 19 Tex.Jur., Expert and Opinion Evidence, p. 354; McCormick and Ray, Law of Evidence, p. 819; Pullman Palace Car Co. v. Smith, Tex., 14 S.W. 993, 13 L.R.A. 215; Texas Employers' Ins. Ass'n v. Perry, Tex.Civ.App., 35 S.W.2d 1087; Shuffield v. Taylor, Tex.Com.App., 125 Tex. 601, 83 S.W.2d 955. (3) The trial court was amply authorized in refusing to charge the community estate with the sum of $1,000 owed by appellant *to his own attorney*. Art. 4638, V.A.C.S.; Hubbard v. Hubbard, Tex.Civ.App., 38 S.W. 388. Aside

from this, no such indebtedness was either pled or proven.

The judgment under review is in all respects affirmed.