LINCOLN INCOME LIFE INSURANCE COMPANY, Appellant,

v.

Ella ANDERSON et vir, Appellees.

No. 7658.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 21, 1966.

Rehearing Denied Dec. 19, 1966.

Crenshaw, Dupree & Milam, Lubbock, Joe H. Nagy and Cecil Kuhne, Lubbock, of counsel, for appellant.

Wagonseller & Cobb, Lubbock, Robert L. Stogner, Lubbock, of counsel, for appellees.

CHAPMAN, Justice.

This is an appeal by Lincoln Income Life Insurance Company from a judgment based upon a jury verdict for Ella Anderson, et vir, mother-in-law of deceased insured, Judy Dedrick, upon an insurance policy insuring the life of the latter person. Suit was for the face value of the policy of $1,000 and for statutory penalty and reasonable attorney's fees. Ella Anderson was the beneficiary in the policy.

The policy provided: "This policy shall be voidable by the company if on its date of issue the insured is not in sound health; * * *."

In the only issue submitted, the jury found that the deceased, Judy Dedrick, was in sound health on November 11, 1963, the date of the issuance of the policy. Reversal is urged on grounds of no evidence; weight and preponderance of the evidence; admission of testimony of lay witnesses that deceased was in sound health at the time of the issuance of the policy; and admission of testimony of Dr. Stettner that contradicted the testimony of the treating osteopathic physician concerning the question of the sound health of deceased.

As we understand the record deceased had been married to Emmett Dedrick, son of Mrs. Anderson, for four or five years before her death and two children had been born as a result of such union. She was sixteen years of age at the time of the birth of the first child in 1961 and the Methodist Hospital records in Lubbock show at the time of such confinement, under "Maternal Complications" the words, "Anemia, sickle cell." In another record from the hospital appear the words, "Anemia to sickle cell disease" and on the same page, "Sickle cell anemia." On another page of the hospital records appear the words, "Small number of sickle cells seen." Still another record shows a diagnosis of "Pneumonitis and sickle cell anemia."

The records show a second child was born to the union approximately a year after the first, since their ages at the time of trial were given as three and four. For a period of time the couple was separated and deceased lived in Amarillo. They never divorced, later resolved their differences, and were living together at the time she was admitted to Porter Clinic Hospital, an osteopathic institution, where she died on September 22, 1964, after twelve days of treatment. Her treating physician was Dr. F. O. Harrold, an osteopathic physician. The certificate of death signed by Dr. Harrold shows: "Immediate Cause (a) Renal hemorrhage due to (b) sickle cell anemia."

It also appears from the record that during the time deceased was separated from her husband and living with a sister in Amarillo she had a kidney removed.

We relate the above facts because of their materiality in connection with the testimony of Dr. Stettner to be hereinafter related.

Dr. Harrold, a general practitioner of osteopathy, testified for appellant. His qualifications show a D. O. degree resulting from a three-year course in the College of Osteopathic Medicine and Surgery in Des Moines, Iowa, with no legitimate internship, apparently not required at the time he

started his practice in his profession. He testified that from the Methodist Hospital records and from his examination and treatment of deceased it was his opinion that she was not in sound health on November 11, 1963. He also testified that sickle cell anemia is a hereditary blood disease that appears almost exclusively in the Negro race within the United States and is found in about two-tenths of the Negro population.

Dr. Stettner testified for appellee. His background of training is very impressive. He received his Bachelor of Science degree from College of the City of New York in 1942, his Master of Science degree in biochemistry from New York University in 1948 and his D. O. degree from Still College of Osteopathy and Surgery in 1955. He taught biochemistry and physiology in New York Medical College in New York from 1946 to 1948. He was the clinical biochemist in charge of all laboratories in the Good Samaritan Hospital in Dayton, Ohio, and while in the School of Osteopathy operated the clinical laboratories of the Des Moines Still Hospital. He did his internship at Dallas Osteopathic Hospital from 1955 to 1956. At the time of this trial he was chief of the medical staff at Lubbock Osteopathic Hospital. He belongs to numerous osteopathic societies, owns a medical library of approximately 1,000 books, and periodically attends seminars and institutes to keep himself abreast of the latest developments in his profession. His testimony is too extended to quote, but in substance he directly contradicted the testimony of Dr. Harrold on the material question under consideration.

He testified that sickle cell anemia, sickling trait and sickle anemia refer to red blood cells in the blood stream and that sickling is a phenomenon that can be artificially produced; that one may have sickle anemia and sickle traiting and not have sickle cell anemia; might have sickle cell anemia in November 1961 and in November 1963 have sickle traiting only; then in September 1964 have sickle cell anemia again.

Dr. Stettner further stated that it would be extremely rare for a doctor to see even one patient in a lifetime dying of sickle cell anemia; that it is not a deadly disease such as cancer and that in effect it is fatal only in connection with some other ailment. Significantly, the doctor testified there is no connection between renal hemorrhage on one hand and sickle cell anemia on the other and that the latter cannot cause the former, a direct refutation of the certificate of death.

Then after checking the Methodist Hospital records of blood tests, etc., Dr. Stettner testified definitely that in his opinion they did not show deceased had sickle cell anemia in 1961; that it is essentially a pediatric disease and it is not ordinary that a woman nineteen years of age who has previously given birth to two children would die of sickle cell anemia. He testified that if she had sickle cell anemia in 1961 that was not treated, the chances are that she would not be walking around in 1963; that a kidney removed was no indication that she had the subject disease and that such surgical procedure would have been bad practice for one with the ailment. He then testified positively that in his opinion deceased did not have sickle cell anemia in 1963.

Two lay witnesses, one who was in school with Judy Dedrick, testified in effect that she appeared healthy to them and Mrs. Anderson testified while she was married to her son she worked as a maid and did other type physical labor that constituted "hard" work.

The testimony shows a salesman came to the house to sell the subject insurance policy; that appellee already carried a policy with the company and that he sold policies to other members of the family in addition to Judy Dedrick. Her husband testified that when the salesman, G. Garza, came to their home and sold the policy Judy was in good health and that except for the times when she could not work because of pregnancy or childbirth she worked fairly regularly at maid work and never com-

plained of being unable to do the work. The testimony of her husband was given in the record without objection.

█ It is our opinion that the above testimony presented a controverted issue of fact to be determined by the jury as to the sound health of Judy Dedrick at the time the policy was issued[1] and that the verdict of the jury was not against the great weight and preponderance of the evidence.

██ We believe the two cases cited in Footnote 1 are also decisive of the right of lay witnesses to testify to facts from which sound health could be found by the jury. The Coxson case involved an insured with pulmonary tuberculosis and the Vann case a carcinoma of the uterus. In each case where lay witnesses were similarly situated so as to observe the insured's action, work and behavior as the lay witnesses were to deceased in the instant case, the Supreme Court of Texas held their testimony was admissible. We would be disinclined to hold from the lay testimony alone in this case that there is sufficient probative evidence to support the submission of the issue and the verdict and the judgment in the case. However, in addition to the lay testimony of the sound health of deceased at the time the policy was issued, we have all the testimony of Dr. Stettner. It was contrary to that of Dr. Harrold, which created a fact issue, and we believe the jury had the right to give weight to the superior background of training of Dr. Stettner and to the supporting evidence of lay witnesses. Dr. Stettner also interpreted the hospital records as not showing the deceased had the subject disease in 1961 and none of the M. D.'s who made the records were used as witnesses to contradict him.

█ Appellant asserts by brief that there is not any testimony by Dr. Stettner that raises a fact issue of the insured's good health on November 11, 1963. We do not agree. Based on the records from the Methodist Hospital, her history of physical activity, her motherhood history, and the certificate of death from renal hemorrhage, from which he stated sickle cell anemia had no relationship whatever, he testified positively that in his opinion she did not have sickle cell anemia at the time of the issuance of the policy. When this testimony, together with that of the lay witnesses is considered, we believe it constitutes sufficient evidence to support the jury verdict and is not against the great weight and preponderance thereof in view of the fact that the only evidence contradicting her sound health at the time was that she was a victim of the subject disease. Neither the jury nor this court being trained in medicine, we must depend upon the admissible expert testimony where such testimony is considered. Despite appellant's contention to the contrary, we consider Dr. Stettner's testimony was admissible. The jurors had the right to believe him and disbelieve Dr. Harrold, they being the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. When Dr. Stettner's testimony is added to that of lay witnesses, it is persuasive as to the insured's sound health at the date of the issuance of the policy in question.

We are not unmindful of the many cases appellant has cited for its contention of reversible error. We have carefully studied all of them with supreme judicial sanction and find them easily distinguishable on the facts from the instant case.

The judgment of the trial court is affirmed.

1. Coxson v. Atlanta Life Insurance Co., 142 Tex. 544, 179 S.W.2d 943 (1944); Vann v. National Life & Accident Ins. Co., 24 S.W.2d 347 (Tex.Com.App.1930, opinion adopted).