# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-02-00639-CV

---

**Kelli Hinojosa and Rogelio Hinojosa, both individually and on behalf of The Estate of Bryan Hinojosa, Appellants**

**v.**

**Columbia/St. David=s Healthcare System, L.P. d/b/a South Austin Hospital; Paul Locus, M.D.; and Central Texas Obstetrics and Gynecological Associates, PA, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN203383, HONORABLE PETE LOWRY, JUDGE PRESIDING**

---

**O P I N I O N**

Kelli and Rogelio Hinojosa, individually and as representatives of the estate of their son Bryan, who died during the labor and delivery process, brought suit against the hospital, Columbia/St. David=s d/b/a South Austin Hospital, their attending physician, Dr. Paul Locus, and his practice group, Central Texas Obstetrics and Gynecological Associates (collectively Aappellees@), for negligent treatment during Mrs. Hinojosa=s labor and delivery. Among other things, they brought claims under the wrongful death and survivorship statutes. Tex. Civ. Prac. & Rem. Code Ann. '' 71.002, .021 (West 1997). The trial court granted appellees= traditional motion for partial summary judgment, which averred that, because Bryan did not survive live birth, his death did not fall within the two statutory claims. The trial court severed the partial summary judgment, creating this final judgment. On appeal, the parents argue that: (1) there exists a material fact issue precluding the grant of summary judgment on the issue of whether Bryan survived live birth and (2) the requirement that a fetus survive live birth in order to recover under the wrongful death and survivorship statutes is unconstitutional on these facts and should be revisited. Among the evidence produced during the summary judgment proceedings, the parents provided a death certificate, signed by Dr. Locus, indicating that Bryan had survived live birth and listing his life span at twenty minutes. Because this certificate, by statute, constitutes *prima facie* evidence of Bryan=s live birth, we will reverse the grant of partial summary judgment.

**BACKGROUND**

The summary judgment evidence shows that, in 2000, Kelli and Rogelio Hinojosa, a deaf couple, were expecting their first child. Mrs. Hinojosa was under the care of Dr. Locus, an obstetrician who

2

knows sign language. Mrs. Hinojosa=s pregnancy progressed normally until the twenty-eighth week. In a normal pregnancy, the mother=s blood pressure drops in the twenty-eighth week. Mrs. Hinojosa=s blood pressure, however, rose. Concerned about her high blood pressure, Dr. Locus ordered Mrs. Hinojosa to bed rest in the thirty-second week of her pregnancy. During an exam five weeks later, on August 3, 2000, Dr. Locus found that, despite her bed rest, her diastolic blood pressure remained elevated. He also observed that, at eight pounds, fifteen ounces, Bryan was macrosomatic.[1] He advised Mrs. Hinojosa to continue bed rest until the following week when, on August 7, 2000, Mrs. Hinojosa was admitted to South Austin Hospital.[2]

Upon admission, Mrs. Hinojosa was diagnosed with pregnancy-induced hypertension and fetal macrosomia. Dr. Locus advised against a caesarean section in favor of vaginal birth. Because Mrs. Hinojosa showed no sign of contractions, Dr. Locus decided to induce labor. Active labor began at 8:50 a.m., and at that time Dr. Locus considered Bryan=s heart tones to be Areassuring.@ After seven hours of difficult labor, at 4:15 p.m., the fetal heart tones began noticeably decelerating. By 7:22 p.m., after Bryan=s heart tones had been extremely low for at least four consecutive minutes, Dr. Locus chose to perform a high forceps procedure in order to hasten delivery.

After delivery, Dr. Locus and the hospital medical staff could not detect any heart tones or perceive any indication that the baby was breathing. The nurses and Dr. Locus were unsuccessful in their

---

[1] Macrosomia is the condition of having an Aabnormally large body size.@ *Stedman=s Medical Dictionary* 825 (5th Lawyer=s ed. 1982).

[2] South Austin Hospital is run by the St. David=s health care network. The parents do not claim that Dr. Locus is part of St. David=s medical staff.

attempts to resuscitate Bryan. Approximately six minutes after birth, the neonatologist, Dr. Breed, arrived. He could not resuscitate Bryan either. Dr. Locus filed a death certificate, listing Bryan=s duration of life at twenty minutes.

The parents brought claims against appellees, including claims under the wrongful death and survival statutes. Appellees filed a motion for partial summary judgment to dismiss all of the parents= claims except Kelli Hinojosa=s claims for her own personal injury and mental anguish and Rogelio Hinojosa=s claims for loss of consortium and personal injury to his wife. Appellees asserted that under *Witty v. American General Capitol Distributors, Inc.*, 727 S.W.2d 503, 504, 506 (Tex. 1987), and *Edinburg Hospital Authority v. Treviño*, 941 S.W.2d 76, 78 (Tex. 1997), there exists no cause of action for the injury or death of a fetus that does not survive live birth. To prove that Bryan had not survived live birth, appellees attached the following evidence to their motion: Bryan=s autopsy report, which refers to Bryan as a stillborn and indicates that, because his lungs were only partially inflated, Bryan in reasonable medical probability had not breathed following delivery; Dr. Locus=s deposition, in which he testified that Bryan had been stillborn and exhibited no signs of life; and excerpts from the depositions of the Columbia/St. David=s medical staff who witnessed Bryan=s birth.[3] These excerpts, taken from the depositions of Dr. Breed;

---

[3] The appellants did not sue the Columbia/St. David=s medical staff directly. They did sue the hospital under the doctrine of respondeat superior for the negligent behavior of the Columbia/St. David=s medical staff. Accordingly, while the hospital medical staff are not named defendants, their conduct is at issue in this case.

Denise Hall, R.N.; Kim Minor, R.N.; Cathy Keller, R.N.; Nancy Wilhelm, R.N.; and Vicki Storm, R.N., all agree that Bryan appeared stillborn and exhibited no signs of life upon birth.

The parents responded by asserting that there existed a material fact issue as to whether Bryan survived live birth. The parents attached to their response excerpts from the depositions of: Kelli and Rogelio Hinojosa, in which they both stated that they had seen Bryan shake after delivery; Dr. Breed, in which he stated that shaking can be evidence of life; and Dr. Locus; Denise Hall, R.N.; Kim Minor, R.N.; Cathy Keller, R.N.; Nancy Wilhelm, R.N.; and Vicki Storm, R.N., all of which contain statements to the effect that only Dr. Locus was in contact with Bryan in the moments immediately following his delivery. The parents also produced a death certificate, signed by Dr. Locus, listing Bryan=s duration of life as twenty minutes. In the alternative, the parents argued that the live birth requirement mandated by *Witty* violated Bryan=s and the parents= rights to equal protection under the Texas and United States Constitutions. U.S. Const. amend. IV, XIV, **'** 1; Tex. Const. art. I, **' '** 3, 19.

The trial court granted partial summary judgment and severed the wrongful-death and survival-statute claims from the remaining causes of action to create the final judgment now on appeal.[4]

---

[4] Appellants also appeal the summary judgment on Rogelio Hinojosa=s claim for mental anguish. This claim, however, is found neither in the motion for severance nor the severance order. As a result, the claim remained part of the underlying lawsuit. Because final judgment has not been entered on Rogelio Hinojosa=s mental anguish claim, it is not properly before us on appeal. *See* Tex. R. Civ. P. 166a(a), (d).

On appeal, the parents urge that the summary judgment was improperly granted because there was sufficient evidence to create an issue of material fact concerning Bryan=s status at birth to preclude summary judgment on the wrongful death and survival statute claims. They argue that Bryan=s death certificate constitutes *prima facie* evidence of live birth sufficient to raise a fact issue. They also ask us to revisit the live-birth requirement established by *Witty* and *Treviño*. Although the parents recognize that those cases are binding precedent, they argue that neither case, nor any of their progeny, involved medical negligence during the actual process of delivery. Because they feel that the distinction between live and still birth creates an unconstitional barrier to recovery where the right to bring suit is determined by the results of the very negligence which causes the harm, the parents ask us to create an intermediate category, between a stillborn fetus and live-born infant, capable of recovering under the wrongful-death and survivor statutes.

Appellees, relying on *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 342 (Tex. 1993), respond that the effect of the death certificate was not properly brought to the trial court=s attention and therefore cannot support the parents= issue on appeal. Appellees also urge that *Witty* and *Treviño* foreclose any possibility of recovering for medical negligence that prevents an otherwise viable infant from being born alive. Because we believe the death certificate constitutes *prima facie* evidence that Bryan survived live birth and was properly a part of the parents= evidence attached to their response to the motion for partial summary judgment, we will reverse. Consequently, we decline to revisit *Witty* and *Treviño* in the context of negligence that occurs during labor and delivery without a fully developed factual record.

**DISCUSSION**

**6**

The standards for reviewing a traditional motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding if there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). The movant bears the burden on the summary-judgment motion. Tex. R. Civ. P. 166a(c); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999). A defendant who moves for summary judgment must negate at least one of the essential elements of each of the plaintiff=s causes of action to be entitled to summary judgment. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993). Our review is *de novo*; if we find inconsistencies in the summary-judgment evidence such as to raise an issue of material fact, we must reverse the summary judgment and remand to the trial court. *See Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 731 (Tex. App.CAustin 2001, no pet.).

Appellees moved for partial summary judgment on the ground that, if Bryan did not survive live birth, the parents could not prove an essential element of their wrongful-death and survivorship claims. Appellees attached to their motion for partial summary judgment depositions of the attending medical professionals stating that, based on various objective indicia that they personally observed, it was their expert opinion that Bryan had not been born alive. These conclusions were based on deposition testimony that Bryan was cold and without a heart beat once delivered and the autopsy report regarding his lung inflation. Dr. Breed stated that, based on his observations during the attempt to resuscitate Bryan and his

7

expertise in neonatology, he did not believe that Bryan had been born alive. We note that expert opinions generally only create a fact issueCthe trier of fact is free to accept or reject any or all such testimony. Tex. R. Civ. P. 166a(c); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998).

The parents responded by producing deposition testimony by Kelli Hinojosa, at least partially corroborated by Rogelio Hinojosa,[5] indicating that they had seen Bryan shaking or moving after birth. They also attached an excerpt from Dr. Breed=s deposition in which he stated that, in a baby whose umbilical cord has been severed, both shaking and rigidity can be Asigns of life.@ *See Showery v. State*, 690 S.W.2d 689, 696 (Tex. App.CEl Paso 1985, pet. ref=d) (in jury trial for murder, movement of fetus factor to be considered by jury in determining whether live birth had occurred). They also produced statements made by the hospital personnel that only Dr. Locus had access to Bryan directly after birth. The parents assert that, because their lay observations are coupled with expert testimony, their deposition testimony describing Bryan as Ashaking@ is sufficient to raise an issue of material fact. *See Lincoln Income Life Ins. Co. v. Anderson*, 409 S.W.2d 555, 558 (Tex. Civ. App.CAmarillo 1966, writ ref=d n.r.e.) (lay observation testimony properly offered before jury to determine if decedent was in Asound health@ for purposes of life-insurance policy).

Appellees respond with the general rule that lay testimony is insufficient to refute an expert=s testimony. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *see also Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 275 (Tex. App.CAustin 2002, pet. denied) (ALay witnesses . . . are not competent

---

[5] Appellees attempt to discredit Rogelio=s deposition by pointing out that he made substantive changes after reviewing his answers.

to controvert an expert=s opinion.@).  Appellees concede that lay persons in medical-malpractice cases may testify about their observations of other persons= physical condition, even when that testimony contradicts a medical expert=s testimony.  *Williams v. Bennett*, 610 S.W.2d 144, 146 (Tex. 1980) (lay testimony that complainant was suffering from visible signs of infection sufficient to refute doctor=s testimony that complainant was free of infection when discharged from hospital).  However, appellees submit that such testimony is only competent to establish elements of causes of action based on observable fact, not those requiring expert conclusion.  *See id.*; *see also Showery*, 690 S.W.2d at 691 (in murder case, observations of doctor=s behavior sufficient to suggest that fetus had been born alive);  *Shuffield v. Taylor*, 83 S.W.2d 955, 957-60 (Tex. 1935) (parents could testify to pre-surgery condition of patient=s throat, ruling out other possible causes of patient=s condition); *Maedgen v. Kolodny*, 384 S.W.2d 410, 415 (Tex. App.CHouston 1964, writ ref=d n.r.e.) (when expert testified that eye ulcers may have resulted from eye surgery, lay witness testimony could establish that plaintiff never had ulcers before surgery, nor in an untreated eye after surgery, to establish causation through circumstantial evidence).  According to appellees, because the medical experts= testimony was legally sufficient to support appellees= position that Bryan was not born alive, the burden was on the parents to produce other expert testimony to controvert the claims.  *See Anderson*, 808 S.W.2d at 55.  Appellees contend that, because the parents produced no contradicting expert opinion and produced no lay observations refuting the basis of the experts= opinions, their deposition testimony as presented failed to raise an issue of material fact.

While we tend to agree with appellees that the lay observations made by the parents that Bryan shook after being delivered, standing alone, are not sufficient to refute the expert opinions offered by

**9**

appellees, the parents also attached a copy of Bryan=s death certificate. The death certificate was signed by Dr. Locus, one of the defendants in this case.

The Texas Administrative Code creates two different death certificates: (1) a VS-113 ACertificate of Fetal Death@ to be filed in the case of a death that occurs prior to complete expulsion or extraction from the mother, indicated by the fact that after such separation the fetus does not breathe or show any evidence of life (fetal death or stillbirth); and (2) a VS-112 ACertificate of Death@ to be filed in the case of a death that occurs after the complete expulsion or extraction from the mother, indicated by the baby=s breathing or showing evidence of life after such separation. 25 Tex. Admin. Code '' 181.1(10), .1(16), .14 (2002). The different death certificates are established by statute. Tex. Health & Safety Code Ann. ' 193.001 (West 2001). Either the person in charge of internment (generally the attending physician) or the funeral home is required to fill out the proper death certificate in each case, depending upon when the death occurred, and must also attest to its validity by signing it. *Id.* '' 193.002, 193.005(h). Once a Certificate of Fetal Death or Certificate of Death is certified by the state registrar, it becomes *prima facie* evidence of the facts attested to in that record. *Id.* ' 191.052 (West 2001); *Stroburg v. Insurance Co.*, 464 S.W.2d 827, 829 (Tex. 1971) (recitation of facts in death certificate is *prima facie* evidence of those facts); *see also Marker v. Prudential Ins. Co. of Am.*, 273 F.2d 258, 261-62 (Tex. 1958) (death certificate admissible as *prima facie* evidence of statements made therein even though amended, contrary death certificate was later executed).

The term A*prima facie* evidence@ is ambiguous at best; it sometimes entitles the producing party to an instructed verdict, absent contrary evidence, and sometimes means that a party has produced

sufficient evidence to go to the trier of fact on the issue. *See Coward v. Gateway Nat=l Bank*, 525 S.W.2d 857, 859 (Tex. 1975). We believe that, under either interpretation, section 191.052 establishes that the contents of a properly filed death certificate are sufficient to raise a fact issue to survive summary judgment and be presented to the trier of fact. *See id.* (award of attorney=s fees based on statutory *prima facie* proof, consisting of minimum fee schedule, appropriate before trier of fact but not on summary judgment).

Bryan=s death certificate was filled out on a VS-112 form, with an annotation listing duration of life at twenty minutes. Dr. Locus signed and verified the information. By itself, the fact that a VS-112, rather than a VS-113, form was used creates a reasonable inference that Bryan survived live birth. By statute, when Dr. Locus signed the VS-112, it became *prima facie* evidence of the information contained therein. Tex. Health & Safety Code Ann. ' 191.052. Although the death certificate is only *prima facie* evidence of life, and therefore subject to rebuttal or explanation *at trial*, it constitutes proof conflicting with the evidence provided by the appellees and is therefore sufficient to raise a question of fact as to whether Bryan survived birth. *See Stroburg*, 464 S.W.2d at 829 (indication of cause of death on death certificate raises *prima facie* evidence, but is subject to rebuttal at trial).

Appellees respond to the information contained in the death certificate by arguing that the issue was not specifically raised before the trial court in a written motion, answer, or other response in order to be considered on appeal. Tex. R. Civ. P. 166a(c); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) (nonmovant need not specially except to summary-judgment motion presenting some, but not all, of the available causes of action because moving party elects on which causes

**11**

of action it will rely).  The parents= response to the motion for partial summary judgment raised the issue of whether Bryan had been born alive.  The death certificate was attached to the response.  Appellees appear to argue that the parents= response to the motion for partial summary judgment is insufficient to preserve an argument based on the death certificate because the written motion does not specifically rely on the death certificate=s statutory significance.

Appellees= position confuses the requirement that all *issues* be raised in a motion before the trial court with an assessment of all the *evidence* produced in the summary-judgment proceedings.  An issue is a proposition specifically addressed to the cause of action or claim that, if found to be true, directly requires that summary judgment be either granted or denied.  *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002) (Aissue@ on summary judgment: whether Wal-Mart willfully detained plaintiff); *Limestone Prods. & Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311-12 (Tex. 2002) (Aissue@ on summary judgment: whether driver was employee for vicarious liability purposes); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990) (failure to include various causes of action, including DTPA violations and negligence, constituted failure to identify Aissue@); *see also Black=s Law Dictionary* 577-78 (abridged 6th ed. 1991) (Aissue@ must address cause of action or its essential elements).  Issues must be set out specifically in a motion, answer, or other response.  Tex. R. Civ. P. 166a(c).  Evidence, on the other hand, comprises the documents and other materials included in the record that tend to make the proposition at issue more or less probable. *Wal-Mart*, 92 S.W.3d at 506 (materials showing that Wal-Mart knew its security system could lead to erroneous detention of customers was Aevidence@ in support of issue that Wal-Mart willfully detained plaintiff in false-imprisonment case); *Limestone*, 71 S.W.3d at 311-12 (evidence that defendant company did not pay driver=s federal taxes was Aevidence@ offered in support of

**12**

proposition that driver was not employee in motion for summary judgment on claim for vicarious liability). Evidence attached to these motions for the court to consider in determining the propriety of summary judgment need not be set out specifically. *See Dear v. City of Irving*, 902 S.W.2d 731, 735 (Tex. App.CAustin 1995, writ denied) (issues must be raised with sufficient specificity in motion for summary judgment, but evidence need only be referenced). A non-movant need not set out the exact evidence on which it relies or explain with specificity how this evidence supports the issues it raises; summary judgment is not a trial by affidavit or deposition. *Id.*; *see also Truong v. City of Houston*, 99 S.W.3d 204, 215 (Tex. App.CHouston [1st Dist.] 2002, no pet. h.) (*McConnell* only refers to grounds for summary judgment, not evidence in support of those grounds). Evidence need only be referenced or attached in order for a court to consider it. *Dear*, 902 S.W.2d at 735.

Because the parents argued that Bryan was born alive in their motion, they presented the *issue* of Bryans live birth to the trial court with sufficient specificity to satisfy the requirements of rule 166a and *McConnell*. The death certificate serves as *evidence* on the issue of live birth. The parents were not required to explain with specificity exactly how each document supported their contention, nor were they required to argue their evidence in order for the trial court to consider it.

Our job in reviewing a traditional summary judgment is not to weigh the ultimate merits of the case, but to determine whether there exists any issue of material fact for the trier of fact to resolve. We are faced with two sets of evidence: (1) expert conclusions drawn from objective indicia, indicating that Bryan was not alive at birth, and (2) an official record, which by statute constitutes *prima facie* evidence of its contents and which was signed by one of the defendants, indicating that Bryan was born alive, coupled with additional observations by the parents of voluntary movements after birth. The contradiction between

**13**

the two is sufficient to raise a material fact issue. Because there exists a fact issue as to whether Bryan was born alive, we sustain the parents= issue regarding summary judgment evidence.

## CONCLUSION

We reverse the grant of partial summary judgment and remand to the trial court for further proceedings.


Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson: Opinion by Justice Kidd;
   Concurring Opinion by Justice Patterson

Reversed and Remanded

Filed:  May 8, 2003