# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00468-CV

**Dannellia Gladden-Green, Appellant**

**v.**

**Freescale Semiconductor, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-09-003894, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dannellia Gladden-Green filed this suit against her former employer, Freescale Semiconductor, Inc., complaining of racial and gender discrimination in Freescale's employment decisions pertaining to her and of retaliation against her for participating in discrimination investigations. The trial court granted summary judgment in favor of Freescale on all of Gladden-Green's claims. On appeal, Gladden-Green contends that the trial court erred by granting the summary judgment as to two of her claims: the denial of a promotion and the later termination of her employment. We will affirm the judgment.

## BACKGROUND

Gladden-Green, who is African-American, was hired by Freescale in February 2005 as a Product Marketing Manager. Shortly thereafter she was asked to perform expanded duties at her same pay and position level. She agreed to do so, at the urging of human-resources staff that she be

a "team player." Gladden-Green expressed interest in advancing to higher, executive-level positions within the company, and after about seven months in her original role, she was asked to serve as the Executive Assistant to the CEO. According to Gladden-Green, this was a "role designed to launch the incumbent into the next level of management."

During Gladden-Green's tenure as Executive Assistant, the CEO began expressing concerns to human resources about her performance and doubts as to her ability to serve in a senior leadership role. The human-resources team then worked closely with Gladden-Green to find a suitable alternate position. After she had served about eight months as Executive Assistant to the CEO, she was offered and accepted the position of Director of Business Operations in the automotive sector, a position that Gladden-Green later alleged to provide little opportunity for growth, as Freescale had decided not to invest in growing that business. The Senior Vice President for Human Resources, Kurt Twining, later explained the placement of Gladden-Green into that position as being due to her inability to create demand within the senior management for her services.

When Gladden-Green decided that her career was limited in the automotive sector, she began looking for another role within the company. She informed human resources that she was interested in global sales and marketing, specifically in the Asian market. During that time, the company was looking to create a marketing sector that was market-driven rather than product- or technology-focused. Joe Yiu was the Senior Vice President for Global Consumer Marketing and was involved in the creation of that new sector. Gladden-Green's automotive position was eventually eliminated, but Freescale continued to employ her. Then several months later, in February 2008, Yiu offered her an executive-level position of Global Consumer Marketing Lead.

2

Gladden-Green readily accepted, but within two weeks, the offer was rescinded because Yiu did not have the authority to offer her the position.

That authority resided in Lou Lutostanski, another Senior Vice President, who proceeded to formally consider Gladden-Green for an executive-level position within his organization by interviewing her, as did Henri Richard, the Senior Vice President of Global Sales and Marketing, and others. Based on these interviews, Lutostanski did not reinstate Yiu's offer to Gladden-Green of the Global position, nor did he offer her the position of Consumer Marketing Lead for the Americas, a lower-level, regional position Lutostanski was seeking to fill, because he felt that she did not have enough relevant practical experience, specifically direct face-to-face customer contacts.

Human resources assured Gladden-Green that they would "make this right," and she was asked for input on how she could add value to the Global Sales and Marketing team. Her interests coincided with a need identified by the heads of that team for centralized support to bridge across the multiple organizational boundaries. With the support of human resources and the Global team, Gladden-Green crafted a job description for herself with the title of "Director of Marketing Operations" in the Global Sales and Marketing sector. In the process of finalizing her appointment to that position, the word "director" was removed from her title by the manager to whom she reported. Gladden-Green raised the issue of her title and pay with human resources and the sales and marketing department, claiming her pay was too low for her position and compared with similarly positioned and qualified peers. She claims to have never received a successful resolution on the issues, but rather was assured that she was being "appropriately paid."

After a few months in her newest role, Gladden-Green was assigned to a new manager, Greg Heinlein. Freescale brought in Heinlein as Vice President of Sales and Marketing to improve that sector's overall organization, determine how to cut costs, and downsize by laying off "substantial numbers" of people. In this process, he consulted with other executives and staff to learn more about various employees and their employment and performance history with Freescale.

Heinlein met with the four to six employees who reported directly to him and determined which roles they were fulfilling, which duties or positions were unnecessary, and how to restructure and reassign job duties. For several of the employees (all white) within Gladden-Green's group, Heinlein created new positions or expanded their duties, based on their qualifications and experience. He determined that Gladden-Green's job (as well as a few others) was an unnecessary, administrative one because the position amounted mostly to checking the work of other people. She also, in his opinion, had not been very successful in influencing the integration of the segment marketing team with the product marketing team and did not have the skills or experience to fulfill the positions into which he moved some of the other employees under his supervision.

Meanwhile, in July 2008, Lutostanski, Richard, and human resources interviewed Glen Burchers, a white male, for the position of Global Consumer Marketing Director. The interviewers decided that Burchers was not ready to take on the Global role, but they found value in Burchers's consumer expertise, industry knowledge, and marketing skills and offered him the position of Marketing Director for the Americas, with the intent to evaluate his performance for potential future promotion to the Global position. Shortly thereafter in September 2008, Burchers was promoted to the position of Global Consumer Marketing Director.

Also in July 2008, Gladden-Green submitted a declaration to the Equal Employment Opportunity Commission (EEOC) in support of charges of racial discrimination against Freescale filed by two other African-American former employees, setting forth how she believed she had been discriminated against because of her race. Although Gladden-Green expressed her goals and thoughts with Heinlein about how she could add value—by further helping to integrate the two marketing teams—Heinlein determined that not only was she not the right person for that position, but that keeping the position was not the right focus or use of resources for the organization during cost cutting. Thus, Gladden-Green was laid off as part of a larger reduction in force in November 2008, along with other employees in Heinlein's group whom Heinlein described as primarily "checking other people's work and creating processes to help [others] do their jobs but weren't actually responsible for anything themselves." Believing that she had suffered various adverse employment actions by Freescale because of her race and gender and in retaliation for her participation in the EEOC investigations of the other employees, Gladden-Green filed her own charge with the EEOC and the Texas Workforce Commission (TWC) on February 2, 2009.

## DISCUSSION

Our review of a summary judgment is de novo. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). In reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving doubt in favor of the non-movant. *Knott*, 128 S.W.3d at 216. If we find that the summary-

5

judgment evidence is sufficient to raise an issue of material fact, we must reverse the summary judgment and remand to the trial court. *Hinojosa v. Columbia/St. David's Healthcare Sys., L.P.*, 106 S.W.3d 380, 384 (Tex. App.—Austin 2003, no pet.). Where the summary-judgment order does not specify its basis for the ruling, we will affirm the summary judgment if any of the grounds asserted in the motion have merit. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

On appeal, Gladden-Green asserts that the trial court improperly granted Freescale summary judgment on her failure-to-promote claim and termination-of-employment claim because there are genuine issues of material fact as to every element of each.

**Failure-to-promote claim**

Gladden-Green's first issue asserts that the trial court improperly granted Freescale summary judgment on her claim that Freescale unlawfully discriminated against her in failing to promote her to the position of Global Consumer Marketing Director because: she established a prima facie case for this claim; Freescale did not meet its burden to articulate a legitimate reason for its failure to promote her; and, to the extent Freescale did articulate a legitimate reason, its reason is a pretext for discrimination on the basis of race. In response, Freescale asserts that Gladden-Green's promotion claim is time-barred, but that even if it were timely filed, summary judgment was proper because her race-discrimination claim fails as a matter of law.

Freescale argues that Gladden-Green's claim based on the lack of promotion to the Global Consumer Marketing position is time-barred because she was informed that she did not receive that position in February 2008, more than 180 days before she filed her complaint with the EEOC. Texas law requires that a complaint of unlawful employment practices be filed

6

with the EEOC or the TWC within 180 days after the alleged unlawful employment practice occurred. *See* Tex. Lab. Code § 21.202; *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2006, no pet.). This time limit is mandatory and jurisdictional. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485-86 (Tex. 1991); *Lueck v. State*, 325 S.W.3d 752, 766 (Tex. App.—Austin 2010, pet. denied). Failure to file the complaint within the 180-day period constitutes failure to exhaust administrative remedies and deprives the court of subject-matter jurisdiction. *Davis*, 226 S.W.3d at 491.

The limitations period "begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 492-93 (Tex. 1996) (holding 180-day limitations period began to run when employee was "informed" of the allegedly discriminatory termination decision, not when she was actually terminated); *Davis*, 226 S.W.3d at 491 (holding 180-day limitations period begins when the discriminatory acts are communicated, not when "the consequences of the acts become most painful"); *see also Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Because this limitation period is jurisdictional, and a finding in favor of Freescale on this point would preempt further inquiry into Gladden-Green's other arguments, we begin with a discussion of the timeliness of her claim.

Gladden-Green makes legal arguments (for the first time on appeal) that she was erroneous in her belief that she was denied the Global position in February 2008, arguing that although she *thought* she had been offered and then denied the Global position, it was only after conducting discovery for this lawsuit that she realized she was actually offered and denied a position entitled Consumer Marketing Lead *for the Americas* instead and was not denied the

7

Global promotion until many months later when that position was filled by Burchers.[1]  However, the summary-judgment evidence reveals that in February 2008 Gladden-Green was told and actually believed that she had been denied the Global position rather than the Americas position.

In fact, all the evidence relating to what she was told or believed in February 2008 conclusively establishes that she discovered she had not been promoted to the *Global* executive-level position.  In her deposition, Gladden-Green states three separate times that she believed the position Yiu offered, which was shortly thereafter rescinded, was "global consumer electronics lead."  She also testified that:  she reached out to Yiu because she wanted to "follow up on a passion that [she] had, to work with what was going on in Asia"; that in working with Freescale personnel after being denied the Global position, she met with Richard's "global staff" to find the right fit for her; and that after she was denied the Global position, she was offered and took the position of Marketing Operations Director for the Global Sales and Marketing team.

Additionally, the July 2008 EEOC declaration Gladden-Green made in support of discrimination complaints against Freescale made by colleagues declared that "in February 2008, I was offered an executive level position as Global Consumer Marketing Lead" by the "Senior Vice President (Global Consumer Marketing) responsible for this function," but that a week and a half later the offer was rescinded.  Even her petition filed with the district court alleged that she had been offered and then denied the position of "Global Consumer Marketing Lead" in February 2008.  Although Lutostanski testified that after Yiu's offer to Gladden-Green for the Global position was

---

[1]  Both parties agree that the fundamental difference between the two job positions at issue concerns their scope of responsibility—"Global" versus "the Americas"—rather than the exact wording of the job title (for instance whether it is labeled "Lead" or "Director," as Freescale executives and human-resources personnel appear to use those words interchangeably).

rescinded, he interviewed her for "the Americas consumer role," all the evidence establishing what Gladden-Green was told and knew at the time is to the contrary. The salient inquiry is what was *Gladden-Green*'s understanding of which job was at issue, and therefore when did she sustain the alleged injury? *See Ricks*, 449 U.S. at 257 (focus for limitations period is discriminatory act alleged in complaint); *Ramirez v. City of San Antonio*, 312 F.3d 178, 181-82 (5th Cir. 2002) (limitations period on employment-discrimination claim begins running from time complainant knows or reasonably should have known that the challenged act has occurred); *Davis*, 226 S.W.3d at 491-92 (basing inquiry about when allegedly illegal employment actions occurred for purposes of limitations on when employee first recognized adverse actions by employer and what employee believed about such actions). The uncontroverted evidence establishes that she knew about the injury for which she seeks recovery (denial of promotion to the Global position) in February 2008, more than 180 days before she filed her complaint with the EEOC.

Gladden-Green attempts to revive her untimely filed claim by asserting that the clock began running not in February 2008 when she was told she would not be getting the Global promotion, but rather when the position was eventually filled by another employee in September 2008. We do not find merit in this attempt to toll the statutory deadline given that established case law holds that the limitations period begins running when the employee is informed of the allegedly discriminatory employment decision. *See Specialty Retailers*, 933 S.W.2d at 492-93. As such, we overrule Gladden-Green's first issue and do not reach whether she established a prima facie case or whether Freescale's reasons for not promoting her to the Global position were mere pretext.

9

**Unlawful termination-of-employment claim**

Gladden-Green's second issue asserts that the trial court improperly granted Freescale summary judgment on her claim that her employment was terminated because of unlawful discrimination based on her race and gender because she established a prima facie case for this claim and that Freescale's proffered reasons for terminating her employment are a mere pretext for unlawful discrimination. She asserts that the record contains evidence of Freescale's intent to discriminate against her on the basis of race and gender in two main forms: (1) Freescale's disparate treatment of her compared to similarly situated white, male employees and (2) the discriminatory atmosphere she alleges existed at Freescale.

To establish a prima facie case of discrimination in the context of a reduction in force, a plaintiff must establish the following elements: (1) she is a member of the protected group; (2) she has been adversely affected by the employer's decisions; (3) she was qualified to assume another position at the time of discharge; and (4) there is direct or circumstantial evidence from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.[2] *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991); *see also Specialty Retailers*, 933 S.W.2d at 492 (because one purpose of the TWC is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority); *Stinnett v. Williamson Cnty. Sheriff's Dep't*, 858 S.W.2d 573, 576 (Tex. App.—Austin 1993, writ denied). To establish a

---

[2] In its traditional and no-evidence motions for summary judgment, Freescale challenged only the fourth element of Gladden-Green's termination claim. Therefore, we will assume sufficient evidence to withstand a summary judgment as to the other three elements.

prima facie case, a plaintiff need make only a very minimal showing. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the employment action. *Alvarado v. Texas Rangers*, 492 F.3d 605, 618 (5th Cir. 2007). If the defendant can do so, the burden shifts back to the plaintiff to present evidence sufficient to create an issue of material fact that either: (1) the employer's stated reason is not genuine, but is merely pretext for discrimination; or (2) the decision was based on "mixed motives," and the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the employee's race or gender. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Because it is "relatively easy both for a plaintiff to establish a prima facie case and for a defendant to articulate legitimate, nondiscriminatory reasons for [its] decision, most disparate treatment cases are resolved at the third stage of inquiry, on the issue of whether the defendant's reasons are pretextual." *Amburgey*, 936 F.2d at 811 (quoting *Thornbrough*, 760 F.2d at 639 n.6). Courts often assume arguendo that a plaintiff has established a prima facie case of unlawful employment discrimination. *E.g.*, *Nichols*, 81 F.3d at 42.

In light of this precedent, the light burden both plaintiff and defendant have in the first two steps of the relevant analysis, the factual record before us, and the fact that Freescale challenged only the fourth element of Gladden-Green's prima facie case, we will assume without deciding that Gladden-Green established a prima facie case for her termination claim and that Freescale has met its burden of articulating a legitimate, non-discriminatory reason for laying her off. We will thus turn our focus to the issue of pretext, and in this context, whether Gladden-Green has presented sufficient evidence to create a fact issue that the real reason for her termination was discrimination.

The salient inquiries when considering whether an employer's reasons were pretextual are whether a discriminatory motive more likely motivated the employer and whether the employer's explanation is unworthy of credence. *Harrington v. Harris*, 118 F.3d 359, 367-68 (5th Cir. 1997).

Gladden-Green argues that the four specific criteria Heinlein outlined in his deposition as guiding his decision whether to retain her raise a genuine issue of material fact on pretext. Heinlein testified that: (1) her job was unnecessary because his sector "didn't need process control people to evaluate whether [people] were doing their job[s]"; (2) she did not possess the appropriate skills and qualifications for a reorganized position, including the newly created or revised positions for which he considered and retained other employees; (3) her reputation among his staff and others who had worked with her previously revealed that she was difficult to work with, overbearing, condescending, and arrogant; and (4) he considered the chemistry between them poor in comparison to his chemistry with other staff members. We find that this evidence does not on its own create a material fact issue supporting Gladden-Green's claim that race or gender were motivating factors in Heinlein's decision. However, Gladden-Green asserts that these reasons must be viewed in conjunction with the evidence of her employment history with Freescale and an alleged corporate discriminatory atmosphere. In reviewing the additional evidence, we note that each employment-discrimination case is unique, and we must analyze the "nature, extent, and quality of the evidence" in determining whether a fact finder could reasonably infer discrimination. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000).

Gladden-Green presented evidence summarizing the history of her various positions and duties at Freescale, asserting that the entirety of it belies a consistent and intentional effort by Freescale to treat her less favorably than equally qualified non-African-American, male employees.

12

Gladden-Green claims that she was in a non-critical position (and thus slated for a lay off) at the time Heinlein conducted his reorganization because of a pattern of discriminatory treatment she had received while employed at Freescale, alleging she was consistently assigned to low-impact, low visibility jobs. However, the evidence does not support Gladden-Green's assertion.

Early into Gladden-Green's tenure at the company, she was given an opportunity to work directly with the CEO and be assessed for future personal career development and executive-level leadership. The uncontroverted evidence shows that while in that Executive Assistant position she was not successful in creating demand for her services or demonstrating how she could meaningfully add value to the company at an executive level. Kurt Twining with human resources testified that while in the position, Gladden-Green had "acted in a very entitled way," had not "done anything to really go and add deep value," and had performed the administrative role of following up with other employees on what the CEO had asked them to do or merely reporting information to the CEO rather than bringing new ideas of her own. He also testified that, when exiting the position, Gladden-Green was "just interested in being promoted" and simply wanted to know which positions were available, rather than engage in a conversation about how she had gained the necessary experience to "leap out into something different and new." Twining testified that the measure of whether an employee has created "pull" for her services is "how many people are asking [him] to put [her] on their team." In trying to find Gladden-Green a new position, Twining reached out to "every one of [his] HR managers in the United States . . . something [they] had not done for anybody else in the corporation," but in Twining's view she had not added enough value to create a demand for her services. We conclude that no fact finder could reasonably infer from this evidence that race or gender were motivating factors in Freescale's employment actions concerning Gladden-Green.

13

The additional evidence Gladden-Green cites about how her career unfairly developed at Freescale—allegations that she was denied the Global position, she was made to remove the word "director" from her title, she was paid less than what her duties required, and she was not placed into a restructured position when her job was deemed unnecessary—also does not support a reasonable inference that these actions were motivated by race or gender. To the contrary, the relevant evidence supports Freescale's argument that she suffered these adverse consequences because of lawful considerations by her employer (*e.g.*, qualifications, skills, function, performance, experience, personality, and collegiality). The court's role in employment-discrimination cases is "not to second guess every personnel decision." *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 578 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see Equal Emp't Opportunity Comm'n v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (federal anti-discrimination laws were not intended to be "vehicle[s] for judicial second-guessing of employment decisions nor [were they] intended to transform the courts into personnel managers"). Also, an "employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief." *Winters*, 132 S.W.3d at 576 (quoting *Martin v. The Kroger Co.*, 65 F. Supp. 2d 516, 553 (S.D. Tex. 1999)). Moreover, the history of Gladden-Green's allegedly discriminatory career path within Freescale is not probative evidence with respect to whether Heinlein—who had no prior supervisory relationship with Gladden-Green and played no prior role in decisions regarding her employment—decided not to retain her because of her race or gender, or that Heinlein negatively considered those factors in making his lay-off decisions.

Gladden-Green cites an instance when Heinlein used allegedly discriminatory language with her. On the day she left Freescale's employ, which was just after the election of

14

President Obama, he said to her: "I guess y'all did it." She took it to be referring to the idea that African-Americans had successfully elected an African-American president, although she concedes that Heinlein could have been referring to Democrats, as he knew she had been very involved in President Obama's election campaign. She also cites a time when she overheard Lutostanski (who interviewed her but did not hire her for the Global position) make the following incomplete statement to a colleague, referencing another African-American employee: "He's an arrogant ass, black." We conclude that these remarks, even viewed in a light most favorable to Gladden-Green, do not demonstrate unlawful discrimination because they were not related to the lay-off decision and cannot be reasonably viewed to demonstrate race- or gender-based animus in the decision-making process. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000); *see also Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (remarks may serve as sufficient evidence of discrimination if the offered comments are: related to the protected class of persons to which the employee is a member, proximate in time to the termination, made by an individual with authority over the employment decision, and related to the employment decision at issue); *Equal Emp't Opportunity Comm'n v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (in order for comments to be probative of employer's discriminatory intent, they must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that the protected characteristic was an impermissible factor in the decision to terminate the employee). These remarks do not create a material fact issue supporting Gladden-Green's claim that her race and/or gender were motivating factors in her termination.

The evidence Gladden-Green cites in support of the existence of a discriminatory "atmosphere" included the brief appearance in 2004 of a Freescale advertisement in national

15

publications that some complained was reminiscent of the Ku Klux Klan. Upon receiving the negative feedback, Freescale immediately pulled and substantively changed the advertisement. Also, she cites her own deposition testimony where she asserts that during her tenure at Freescale there has been low African-American representation in upper-level management; that the company's diversity team contained no African-American member; that statistical reports created by the company deceptively skewed the number of African-Americans in leadership positions; and that the company's internal community-relations team published materials highlighting employees from various racial and ethnic backgrounds but did not feature an African-American in any position other than administrative (despite doing so for other minorities). This evidence—while perhaps demonstrating corporate racial insensitivity or unenlightened diversity policy—does not rise to the level to allow reasonable minds to infer that Heinlein's reasons for not retaining Gladden-Green were pretextual or that he was motivated in his determinations by her race and/or gender. None of these examples support the reasonable inference that Heinlein's stated reasons were pretextual, and evidence that does not imply pretext when taken alone does not do so when cumulated. *Texas Instruments*, 100 F.3d at 1186-87 (also noting that "rarely will generalized statistical evidence rebut an articulated nondiscriminatory rationale").

While we acknowledge case law wherein courts have permitted fact finders to consider evidence purporting to demonstrate the discriminatory "atmosphere" in which the plaintiff operated, those cases have involved direct probative evidence of an employer's discriminatory behavior directed towards a protected class, not merely an employee's belief and conclusion that an employer's corporate culture is discriminatory. *See Polanco v. City of Austin, Tex.*, 78 F.3d 968, 980 (5th Cir. 1996); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995);

16

*Ratliff v. Governor's Highway Safety Program*, 791 F.2d 394, 402 (5th Cir. 1986). The evidence Gladden-Green cites as demonstrating an "atmosphere" of discrimination is too attenuated and circumstantial, in light of the entirety of the record, to provide a basis for reasonable inferences that Heinlein's stated reasons for laying off Gladden-Green were mere pretext or were motivated by her race and/or gender. *See Crawford*, 234 F.3d at 904 (upholding summary judgment because plaintiff's evidence to rebut non-discriminatory reasons offered by employer was not so persuasive as to support inference that real reason for employment action was discrimination).

Based upon the record before us, we conclude that no fact finder could reasonably infer that Freescale was motived by race and/or gender in terminating Gladden-Green's employment, and we therefore overrule her second issue.

## CONCLUSION

Because we conclude that Gladden-Green did not timely file her failure-to-promote claim with the EEOC and did not present evidence raising a material fact issue on her termination-of-employment claim, we affirm the judgment of the trial court granting summary judgment for Freescale.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: November 20, 2013

17